Stacy Thomsen (SBN 274282)
sthomsen@darroweverett.com
Michael Burke (MA Bar No. 682796)*
mburke@darroweverett.com
DARROWEVERETT LLP
1 Turks Head Place
Suite 1200
Providence, RI 02903
P: 401-453-1200
F: 401-453-1201


Attorneys for Plaintiff
DESIGNTECHNICA CORPORATION

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIGNTECHNICA CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SWIGART LAW GROUP, APC and<br>Thirty-Six (36) Of Its Putative Clients,<br><br>Defendants. | Case No. **'24 CV 1054 W     AHG**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

NOW COMES Plaintiff Designtechnica Corporation ("DTC"), for its Complaint seeking a Declaratory Judgment and Injunctive Relief against Defendant Swigart Law Group, APC ("SLG") and Thirty-Six (36) Of Its Putative Clients ("Claimants") (collectively, Defendants"), and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory and injunctive relief to stop the Defendants from manufacturing and filing arbitration claims *en masse* in California when Defendants acknowledge and are aware that DTC's Terms of Use contain a mandatory arbitration clause

---

*(pro hac vice forthcoming)*

**and** an <u>Oregon</u> choice of law provision requiring Oregon substantive law to apply to any dispute between the parties.

## <u>JURISDICTION AND VENUE</u>

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a corporation incorporated under the laws of the State of Delaware, and having its principal place of business in the State of Oregon, and on information and belief, each of the Defendants is a corporation incorporated under the laws of the State of California, is a citizen of the State of California, and/or was a citizen of the State of California at the time of purported violations giving rise to this action. The amount in controversy exceeds $75,000, exclusive of interests and costs. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*.

3. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this district, the coordinate activity of the Defendants is centered in this district, and on information and belief, Defendants overwhelmingly reside in the State of California, and for those that do not, they are asserting or threatening arbitration claims under California law for purported violations that took place within California.

## <u>PARTIES</u>

4. Plaintiff DTC is a Delaware corporation with its principal place of business in Portland, Oregon.

5. Defendant Swigart Law Group is a law firm based in San Diego, California.

6. The remaining defendants, who are Swigart Law Group's clients, and who upon information and belief overwhelmingly reside in the State of California, and for those that do not, they are asserting or threatening arbitration claims under California law for purported violations that took place within California. The names of the remaining defendants are contained in a partially redacted list attached as <u>Exhibit A</u>.

# **FACTUAL BACKGROUND**

**DTC's Business and Website**

7. Plaintiff DTC is a multimedia company headquartered in Portland, Oregon.

8. DTC owns and maintains the website www.themanual.com, a website providing "the essential guide for men" offering "a suite of expert guides on a wide range of topics, including fashion, food, drink, travel, and grooming[1]" and the website www.digitaltrends.com, a website "that guides consumers to the best products and services available today – and uncovers the innovations that will shape their lives tomorrow."[2] (collectively, the "Websites").

9. Visitors to the Websites are subject to the Websites' Terms of Use ("Terms"), which Terms expressly provide that "by accessing or using our services, you agree to be bound by these terms of use and all terms incorporated by reference.  If you do not agree to all of these terms, do not access or use the services."  *See* Exhibit B: Terms of Use in effect at the time of allegations giving rise to the alleged Claims.

**DTC's Terms of Use**

10. Further, DTC's Websites Terms include a governing law and venue provision, which states:

> **19. GOVERNING LAW AND VENUE**
>
> **Any dispute arising from these Terms and your use of the Services will be governed by and construed and enforced in accordance with the laws of Oregon, except to the extent preempted by U.S. federal law, without regard to conflict of law rules or principles (whether of Oregon or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. Any dispute between the parties that is not subject to arbitration or cannot be heard in small claims court will be resolved in the state or federal courts of Oregon and the United States, respectively, sitting in Multnomah County, Oregon.**

11. DTC's Websites Terms also include a mandatory binding arbitration provision

---

[1] *See*, generally, https://www.themanual.com/ (last accessed June 18, 2024).
[2] *See*, generally, https://www.digitaltrends.com/ (last accessed June 18, 2024)

requiring a party to submit a dispute to binding arbitration administered by JAMS. *See* <u>Exhibit A</u>, Terms, § 18.

12. Therefore, any dispute between the Websites and a visitor to the Websites is subject to mandatory binding arbitration administered by JAMS, during which the arbitrator(s) will apply the substantive law of the State of Oregon.

**SLG and Claimants' File CIPA Claims Despite the Choice of Law Provision**

13. Despite the clear and conspicuous choice of law provision in the Terms, in or around April 2023, SLG began filing individual demands for arbitration on behalf of the individual Claimants each making identical cookie-cutter allegations of, among other things, violations of the California Invasion of Privacy Act ("CIPA"), a California state statute ("the Claims").

14. As of this date, Swigart Law Group has filed thirty-six (36) separate Claims against DTC with JAMS on behalf of the Claimants.

15. Each Claim contains the same identical allegations of CIPA violations based on a Claimant's alleged visit to DTC's Websites:

> "Respondent violated the Federal Wiretap Act, 18 U.S.C. § 2510 et seq and the California Invasion of Privacy Act, Cal. Pen. Code 631 § et seq by intercepting and recording Claimant's electronic communications with Respondent's website then disclosing the information Respondent acquired to Meta Platforms, Inc. dba Facebook. Claimant further bases these claims against Respondent through the common law torts of invasion of privacy and intrusion upon seclusion.

16. The Claims allege that each Claimant's privacy was violated under CIPA by simply visiting and browsing the Websites.[3]

17. While Defendants accept and acknowledge that the Websites' Terms require them to arbitrate the Claims with JAMS, the Claims ignore the same Terms' requirement that Oregon law

---

[3] DTC contends that these allegations do not amount to a violation of CIPA, and moreover, that Claimants have consented to any such collection of data via the Websites' pop-up consent form which is displayed to each Websites visitor on visiting the Websites, along with the DTC privacy policy, and allowed each Websites visitor to opt-out of tracking pixels. However, these issues are at issue for purposes of the relief sought through this action.

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

apply to any of the party's disputes.

18. Upon information and belief, the Claimants have suffered no actual damages and the Claims rely solely on CIPA's $5,000 per violation statutory penalty for any recovery.

19. Moreover, SLG is utilizing a strategy of filing large numbers of baseless claims in contravention of the Terms' choice of law provision in an effort to compel DTC and similar targets to pay to settle claims rather than incur significant arbitration fees.

20. A lack of availability of statutory damages, in the absence of any actual damages suffered by a party, is an insufficient basis to decline enforcement of an agreement's choice of law provision. *See, e.g., Stangvick v. Shiley Inc.*, 54 Cal.3d 744, 761 (1991).

21. Upon information and belief, SLG has filed thousands of similarly meritless arbitration claims and is utilizing arbitration fees as a mechanism to pressure defendants to pay nuisance value settlements to resolve frivolous claims.

## COUNT I

### DTC'S WEBSITES' TERMS ARE ENFORCEABLE

22. Plaintiff hereby restates and re-alleges the preceding Paragraphs of this Complaint as if set forth fully herein.

23. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, "any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

24. The Terms constitute a binding and enforceable agreement between Plaintiff and Claimants.

25. The Terms of Plaintiff's Websites are memorialized in writing on the Websites and accessible to each visitor of the Websites.

26. The Terms expressly provide that "by accessing or using our services, you agree to be bound by these terms of use and all terms incorporated by reference. If you do not agree to all of these terms, do not access or use the services."

27. By visiting the Websites, Defendants and other visitors to the Websites are bound by the

Websites' Terms.

28. Defendants were visitors to the Websites.

29. DTC seeks (1) declaratory relief that the Defendants are bound by the Terms of the Websites and (2) injunctive and equitable relief as is necessity to protect DTC from Defendants' claims to the contrary.

## COUNT II

### DTC'S WEBSITES' TERMS CHOICE OF LAW PROVISION IS ENFORCEABLE

30. Plaintiff hereby restates and re-alleges the preceding Paragraphs of this Complaint as if set forth fully herein.

31. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., "any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

32. The Terms constitute a binding and enforceable agreement between Plaintiff and Claimants.

33. The Terms of Plaintiff's Websites are memorialized in writing on the Websites and accessible to each visitor of the Websites.

34. The Terms expressly provide that Oregon substantive law shall apply to any dispute between the Websites and a visitor to the Websites.

35. Defendants were visitors to the Websites.

36.  A valid choice of law clause, which provides that a specific body of law governs an agreement between parties, encompasses all causes of action arising from or related to an agreement.  *See Olinick v. BMG Entertainment*, 138 Cal.App.4th 1286, 1299 (2006).

37. The choice of Oregon law is reasonable and bears a relationship to the parties.

38. CIPA does not contain an anti-waiver provision.

39. California does not have a greater substantive or public policy interest in the Claims than Oregon.

40. DTC seeks (1) declaratory relief that the Defendants are bound by the Websites' Terms

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

1   Choice of Law provision and (2) injunctive and equitable relief as is necessity to protect DTC

2   from Defendants' claims to the contrary.

3   **PRAYER FOR RELIEF**

4   Wherefore, DTC prays for the following relief:

5   1.  A declaratory judgment that DTC's Websites' Terms are enforceable against Defendants;

6   2.  A declaratory judgment that DTC's Websites' Terms Choice of Law provision is enforceable

7       against Defendants;

8   3.  Preliminary and permanent injunctive relief enjoining enforcement of CIPA against DTC by

9       restraining Defendants, their employees, representatives, agents, and all persons or entities

10      acting in concert with them during pendency of this action and thereafter perpetually from

11      asserting claims under CIPA arising under the same facts and circumstances against DTC;

12  4.  Preliminary injunctive relief staying the arbitration of the Claims pending the outcome of this

13      action;

14  5.  Plaintiff's reasonable costs and attorney's fees pursuant to any applicable statute or authority,

15      and further relief the Court may grant in its discretion; and

16  6.  Any other relief that the Court deems just and appropriate.

17

18  Date: June 18, 2024                           **DARROW EVERETT LLP**

19

20                                                By: _____

21                                                Stacy W. Thomsen
                                                  *Attorney for* Plaintiff Designtechnica Corporation

22

23

24

25

26

27

28

EXHIBIT A

LIST OF CLAIMANTS

1.  M. Bermudez
2.  L. Walker
3.  L. Nunez
4.  A. Paramo
5.  C. Higgins
6.  M. Lozano
7.  E. Mason
8.  S. Bate
9.  D. Boyle
10. L. Davis
11. H. Losey
12. B. Bloodgood
13. M. Cardenas
14. J. Schratz, Jr.
15. J. Nettles
16. C. LaBrecque
17. P. Morera
18. B. Jackson
19. N. Centino
20. H. Alavarez
21. T. Crook
22. D. Leslie
23. C. Fulcher
24. E. Wilson
25. A. Cantilini
26. C. Wally
27. A. Martello
28. M.A. Galloway
29. K. Wurangian
30. G. Taylor
31. L. Menchaca
32. A.Mohamad
33. M. McCalmon, Jr.
34. E. Washington
35. E. Jacobs
36. D. Miller
37. C. Miller

EXHIBIT B

# Last Updated: January 3rd, 2020

PLEASE READ THESE TERMS OF USE CAREFULLY. BY ACCESSING OR USING THE SERVICES, YOU AGREE TO BE BOUND BY THESE TERMS OF USE AND ALL TERMS INCORPORATED BY REFERENCE. IF YOU DO NOT AGREE TO ALL OF THESE TERMS, DO NOT ACCESS OR USE THE SERVICES.

These Terms of Use ("**Terms**") apply to your access to, and use of, any website of Designtechnica Corporation (d/b/a and hereinafter referred to as "**Digital Trends**"),

including www.digitaltrends.com, www.themanual.com, es.digitaltrends.com, www.theangle.digitaltrends.com, and www.21oak.com or other online products or services of Digital Trends (collectively, the "**Services**"). These Terms do not alter in any way the terms or conditions of any other agreement you may have with Digital Trends for products, services or otherwise. If you are using the Services on behalf of any entity, you represent and warrant that you are authorized to accept these Terms on such entity's behalf, and that such entity will be responsible to Digital Trends if you violate these Terms.

Digital Trends reserves the right to change or modify these Terms, or any policy or guideline of the Services, at any time and in our sole discretion. If we make changes or modifications to these Terms, we will provide you with

notice of such changes, such as by sending an email, providing notice through the Services or updating the "Last Updated" date at the top of these Terms. Your continued use of the Services following the posting of changes or modifications will confirm your acceptance of such changes or modifications. Therefore, you should frequently review the Terms and applicable policies to understand the terms and conditions that apply to your use of the Services. If you do not agree to the amended terms, you must stop using the Services.

If you have any questions regarding the Services, please contact Digital Trends by emailing legal@digitaltrends.com.

# 1. PRIVACY POLICY

Please refer to our Privacy Policy for information about how Digital Trends collects, uses and discloses information from our users.

# 2. ELIGIBILITY

You must be at least 18 years of age to access or use our Services. If you are accessing or using our Services on behalf of another person or entity, you represent that you are authorized to accept these Terms on that person or entity's behalf and that the person or entity agrees to be responsible to us if you or the other person or entity violates these Terms.

# 3. USER ACCOUNTS AND ACCOUNT SECURITY

If you sign up for DT Standard or DT Premium, you may register for an account to access our Services. When you register for an account, you must provide accurate information and promptly update this information if it changes. Failure to do so may result in your inability to use our Services. You also must maintain the security of your account and promptly notify us if you discover or suspect that someone has accessed your account without your permission. If you permit others to use your account credentials, you are responsible for the activities of such users that occur in connection with your account.

# 4. PAYMENT

We offer DT Standard and DT Premium memberships on a subscription basis ("Memberships") for the recurring fees ("Fee") and period of time ("Membership Period") disclosed to you when you subscribe to a Membership on our website.

**When you subscribe to a Membership, you expressly acknowledge and agree that Digital Trends (or our third-party payment processor) is authorized to charge you the Fee on a recurring basis at the start of**

**each Membership Period.** For example, if you sign up for a monthly Membership on May 1, you will be charged the Fee on the first day of every month. **You acknowledge, understand, and agree that your Membership is continuous until you cancel it.**

**Cancellation: You may cancel your Membership at any time on your profile page or by emailing us at memberships@digitaltrends.com. The cancellation will apply to the following Membership Period, and your Membership and access to any associated services will continue until the start of the following Membership Period. You will not receive a refund for the current month, nor will fees be prorated.** For example, if you have a monthly Membership that renews on the first of each month and you cancel on May 15, your cancellation will become effective June 1. Until June 1, you will retain your access to the services. You will not receive a refund or proration for the remainder of the month.

If the price of your Membership changes, Digital Trends will notify you at least ten (10) days in advance of the next billing date. If you do not want to pay the new Membership Fee, you must cancel your Membership in accordance with these Terms.

# 5. COPYRIGHT AND LIMITED LICENSE

Unless otherwise indicated, the Services and all content and other materials on the Services, including, without limitation, the Digital Trends logo, and all designs, text, graphics, pictures, videos, information, data, software, sound files and other files, and the selection and arrangement thereof, (collectively, the "Digital Trends Materials") are the proprietary property of Digital Trends or our licensors or users and are protected by U.S. and international copyright laws.

You are granted a limited, non-exclusive and non-sublicensable license to access and use the Services and Digital Trends Materials; however, such license is subject to these Terms and does not include: (a) any resale or commercial use of the Services or the Digital Trends Materials; (b) the collection and use of any product listings, pictures or descriptions; (c) the distribution, public performance or public display of any Digital Trends Materials; (d) modifying or otherwise making any derivative uses of the Services and the Digital Trends Materials, or any portion thereof, unless modification or derivative use is specifically provided for under separate terms; (e) use of any data mining, robots or similar data gathering or extraction methods; (f) downloading (other than the page caching) of any

portion of the Services, the Digital Trends Materials or any information contained therein, except as expressly permitted on the Services; or (g) any use of the Services or the Digital Trends Materials other than for their intended purposes. Any use of the Services or the Digital Trends Materials other than as specifically authorized herein, without the prior written permission of Digital Trends, is strictly prohibited and will terminate the license granted herein. Such unauthorized use may also violate applicable laws, including without limitation copyright and trademark laws and applicable communications regulations and statutes. Unless explicitly stated herein, nothing in these Terms shall be construed as conferring any license to intellectual property rights, whether by estoppel, implication or otherwise. This license is revocable at any time.

# 6. REPEAT INFRINGER POLICY

In accordance with the Digital Millennium Copyright Act ("DMCA") and other applicable law, Digital Trends has adopted a policy of terminating, in appropriate circumstances and in Digital Trends' sole discretion, subscribers who are deemed to be repeat infringers. Digital Trends may also, in our sole discretion, limit access to the Services if you infringe any intellectual property rights of others, whether or not there is any repeat infringement.

# 7. COPYRIGHT COMPLAINTS

If you believe that anything on the Services infringes upon any copyright which you own or control, you may file a notification of such infringement with our Designated Agent as set forth below.

Name of Designated Agent: DT Copyright Agent

Address: 111 SW 5th Ave, Suite 1000, Portland, OR 97201

Telephone Number: 503.342.2890

Fax Number: 503.210.1170

E-Mail Address: copyright@digitaltrends.com

Please see 17 U.S.C. §512(c)(3) for the requirements of a proper notification. You should note that if you knowingly misrepresent in your notification that the material or activity is infringing, you will be liable for any damages, including costs and attorneys' fees, incurred by us or the alleged infringer as the result of our relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing.

# 8. TRADEMARKS

"Designtechnica," "Digital Trends," the Digital Trends logos, the "upgrade your lifestyle" slogan and any other Digital Trends' product or service name or

slogan contained on the Services are trademarks of Digital Trends, and may not be copied, imitated or used, in whole or in part, without the prior written permission of Digital Trends or the applicable trademark holder. You may not use any metatags or any other "hidden text" utilizing "Digital Trends" or any other name, trademark or product or service name of Digital Trends without our prior written permission. In addition, the look and feel of the Services, including all page headers, custom graphics, button icons and scripts, is the service mark, trademark and/or trade dress of Digital Trends and may not be copied, imitated or used, in whole or in part, without our prior written permission. All other trademarks, registered trademarks, product names and names or logos mentioned in the Services are the property of their respective owners. Reference to any products, services, processes or other information, by trade name, trademark, manufacturer, supplier or otherwise does not constitute or imply endorsement, sponsorship or recommendation thereof by us.

# 9. HYPERLINKS

You are granted a limited, non-exclusive right to create a text hyperlink to the Services for noncommercial purposes, provided such link does not portray Digital Trends or any of our products and services in a false, misleading, derogatory or otherwise defamatory manner and provided further that the

linking site does not contain any adult or illegal material or any material that is offensive, harassing or otherwise objectionable. This limited right may be revoked at any time. You may not use a Digital Trends logo or other proprietary graphic of Digital Trends to link to the Services without the express written permission of Digital Trends. Further, you may not use, frame or utilize framing techniques to enclose any Digital Trends trademark, logo or other proprietary information, including the images found on the Services, the content of any text or the layout/design of any page or form contained on a page of the Services without Digital Trends' express written consent. Except as noted above, you are not conveyed any right or license by implication, estoppel or otherwise in or under any patent, trademark, copyright or other proprietary right of Digital Trends or any third party.

Digital Trends makes no claim or representation regarding, and accepts no responsibility for, the quality, content, nature or reliability of third-party websites accessible via hyperlink or websites linking to the Services. Such sites are not under the control of Digital Trends and Digital Trends is not responsible for any embedded content or the content of any linked site or any link contained in a linked site, or any review, changes or updates to such sites. Digital Trends and our users may provide these links as a convenience to you, but the inclusion of any link does not imply affiliation, endorsement or adoption by Digital Trends of any site or any information contained therein.

When you leave the Services, you should be aware that our terms and policies no longer govern, and the policies of those third party sites will now apply. You should review the applicable terms and policies, including privacy and data gathering practices, of any site to which you navigate from the Services.

# 10. THIRD PARTY CONSENT

Digital Trends may provide third party content on the Services and may provide links to web pages and content of third parties (collectively the "Third Party Content") as a service to those interested in this information. Digital Trends does not control, endorse or adopt any Third Party Content and makes no representation or warranties of any kind regarding the Third Party Content, including without limitation regarding its accuracy or completeness. You acknowledge and agree that Digital Trends is not responsible or liable in any manner for any Third Party Content and undertakes no responsibility to update or review any Third Party Content. Users use such Third Party Content at their own risk.

# 11. ADVERTISMENTS AND PROMOTIONS;

# THIRD PARTY PRODUCTS AND SERVICES

Digital Trends may run advertisements and promotions from third parties on the Services or may otherwise provide information about or links to third-party products or services on the Services. Your business dealings or correspondence with, or participation in promotions of, such third parties, and any terms, conditions, warranties or representations associated with such dealings or promotions are solely between you and such third party. Digital Trends is not responsible or liable for any loss or damage of any sort incurred as the result of such dealings or promotions or as the result of the presence of non-Digital Trends advertisements or other third party information on the Services.

# 12. USER CONTENT AND CONDUCT

The Services may include interactive areas where you or other users can create, post or store content, messages, materials, data, information, text, music, sound, photos, videos, graphics, applications, code or other items or materials on the Services (collectively, "User Content"). You are solely

responsible for your use of such interactive areas and agree that you use them at your own risk. You further agree not to post, upload to, transmit, distribute, store, create or otherwise publish through the Services any of the following:

We collect the following categories of personal information as described in the "Collection of Information" section above:

- User Content that is unlawful, libelous, defamatory, obscene, pornographic, indecent, lewd, suggestive, harassing, threatening, invasive of privacy or publicity rights, abusive, inflammatory, fraudulent or otherwise objectionable;

- User Content that would constitute, encourage or provide instructions for a criminal offense, violate the rights of any party, or that would otherwise create liability or violate any local, state, national or international law, including without limitation the FTC rules regarding endorsements;

- User Content that may infringe any patent, trademark, trade secret, copyright or other intellectual or proprietary right of any party. By posting any User Content, you represent and warrant that you have the lawful right to distribute and reproduce such User Content;

- User Content that impersonates any person or entity or otherwise misrepresents your affiliation with a person or entity;

- Unsolicited promotions, political campaigning, advertising or solicitations;

- Private information of any third party, including, without limitation, addresses, phone numbers, email addresses, Social Security numbers and credit card numbers;

- Viruses, corrupted data or other harmful, disruptive or destructive files; and

- User Content that, in the sole judgment of Digital Trends, is objectionable or which restricts or inhibits any other person from using or enjoying the Services, or which may expose Digital Trends or our users to any harm or liability of any type.

You further agree that you are solely responsible for your conduct while on the Services, and you agree that you will not do any of the following in connection with the Services or our users:

- Use the Services in any manner that could interfere with, disrupt, negatively affect or inhibit other users from fully enjoying the Services or that could damage, disable, overburden or impair the functioning of the Services in any manner;

- Impersonate or post on behalf or any person or entity or otherwise misrepresent your affiliation with a person or entity;

- Stalk, intimidate, threaten, or otherwise harass or cause discomfort to other users;

- Send any unsolicited commercial messages;

- Use the Services for any illegal or unauthorized purpose or engage in, encourage, or promote any illegal activity, or any activity that violates these Terms; or

- Circumvent or attempt to circumvent any filtering, security measures or other features.

Digital Trends takes no responsibility and assumes no liability for any User Content posted, stored or uploaded by you or any third party, or for any loss or damage thereto, or for any user conduct, nor is Digital Trends liable for any mistakes, defamation, slander, libel, omissions, falsehoods, obscenity, pornography or profanity you may encounter. Enforcement of the user content or conduct rules set forth in these Terms is solely at Digital Trends' discretion, and failure to enforce such rules in some instances does not constitute a waiver of our right to enforce such rules in other instances. In addition, these rules do not create any private right of action on the part of any third party or any reasonable expectation that the Services will not contain any content that is prohibited by such rules.  Although Digital Trends has no obligation to

screen, edit or monitor User Content, Digital Trends reserves the right, and has absolute discretion, to remove, screen or edit any User Content posted or stored on the Services at any time, for any reason and without notice, and you are solely responsible for creating backup copies of and replacing any User Content you post or store on the Services at your sole cost and expense. Any use of the Services in violation of these Terms and may result in, among other things, termination or suspension of your rights to use the Services.

Except as otherwise provided herein, on the Services or in a separate agreement (such as the rules of a Digital Trends promotion), Digital Trends claims no ownership or control over any User Content. However, by submitting or posting User Content to the Services, you grant Digital Trends a nonexclusive, royalty-free, perpetual, irrevocable and fully sublicensable right to use, reproduce, modify, adapt, publish, translate, create derivative works from, distribute, perform and display such User Content on the Services and on third-party sites. We will contact you directly to obtain permission before we use your User Content for our own commercial purposes, unless you expressly grant these rights to Digital Trends at the time you post or submit such content.

You represent and warrant that (a) you own and control all of the rights to the User Content that you post or you otherwise have the right to post such User

Content to the Services; (b) the User Content is accurate and not misleading; and (c) use and posting of the User Content you supply does not violate these Terms and will not violate any rights of or cause injury to any person or entity.

# 13. SUBMISSIONS

Separate and apart from User Content, you may submit questions, comments, suggestions, ideas, plans, notes, drawings, original or creative materials or other information about Digital Trends, the Services or third party products and services (collectively, "Submissions"). Submissions, whether posted to the Services, Digital Trends social media sites or provided to Digital Trends by email or otherwise, are non-confidential and shall become the sole property of Digital Trends. Digital Trends shall own exclusive rights, including all intellectual property rights, and shall be entitled to the unrestricted use and dissemination of Submissions for any purpose, commercial or otherwise, without acknowledgment or compensation to you.

# 14. IDEMNIFICATION

You agree to defend, indemnify and hold harmless Digital Trends, our independent contractors, service providers and consultants, and their respective directors, employees and agents, from and against any claims, damages, costs, liabilities and expenses (including, but not limited to, reasonable attorneys' fees) arising out of or related to (a) your use of the

Services; (b) any User Content or Submissions you provide; (c) your violation of these Terms; (d) your violation of any rights of another; or (e) your conduct in connection with the Services.

# 15. DISCLAIMER

EXCEPT AS EXPRESSLY PROVIDED TO THE CONTRARY IN WRITING BY DIGITAL TRENDS, THE SERVICES AND DIGITAL TRENDS MATERIALS ARE PROVIDED ON AN "AS IS" BASIS WITHOUT WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED. DIGITAL TRENDS DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT AS TO THE SERVICES, INCLUDING THE INFORMATION, CONTENT AND MATERIALS CONTAINED THEREIN. DIGITAL TRENDS DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR DIGITAL TRENDS MATERIALS ARE ACCURATE, COMPLETE, RELIABLE, CURRENT OR ERROR-FREE. WHILE DIGITAL TRENDS ATTEMPTS TO MAKE YOUR ACCESS TO AND USE OF THE SERVICES SAFE, DIGITAL TRENDS CANNOT AND DOES NOT REPRESENT OR WARRANT THAT THE SERVICES OR OUR SERVER(S) ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS;

THEREFORE, YOU SHOULD USE INDUSTRY-RECOGNIZED SOFTWARE TO DETECT AND DISINFECT VIRUSES FROM ANY DOWNLOAD.

WITHOUT LIMITING THE FOREGOING, DIGITAL TRENDS DOES NOT GUARANTEE THE ACCURACY OF ANY RECOMMENDATIONS OR OPINIONS PROVIDED THROUGH THE SERVICES ("RECOMMENDATIONS"). YOU ARE SOLELY RESPONSIBLE FOR THE USE OF, OR RELIANCE ON, SUCH RECOMMENDATIONS.

# 16. LIMITATION OF LIABILITY

IN NO EVENT SHALL DIGITAL TRENDS, OR OUR DIRECTORS, MEMBERS, EMPLOYEES OR AGENTS BE LIABLE FOR ANY DIRECT, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, OR ANY OTHER DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO LOSS OF USE, LOSS OF PROFITS OR LOSS OF DATA, WHETHER IN AN ACTION IN CONTRACT, TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE) OR OTHERWISE, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE USE OF OR INABILITY TO USE THE SERVICES OR THE DIGITAL TRENDS MATERIALS, INCLUDING WITHOUT LIMITATION ANY DAMAGES CAUSED BY OR RESULTING FROM RELIANCE ON ANY INFORMATION OBTAINED THROUGH THE SERVICES, OR THAT RESULT FROM

MISTAKES, OMISSIONS, INTERRUPTIONS, DELETION OF FILES OR
EMAIL, ERRORS, DEFECTS, VIRUSES, DELAYS IN OPERATION OR
TRANSMISSION OR ANY FAILURE OF PERFORMANCE, WHETHER OR
NOT RESULTING FROM ACTS OF GOD, COMMUNICATIONS FAILURE,
THEFT, DESTRUCTION OR UNAUTHORIZED ACCESS TO DIGITAL
TRENDS' RECORDS, PROGRAMS OR SERVICES. IN NO EVENT SHALL
THE AGGREGATE LIABILITY OF DIGITAL TRENDS, WHETHER IN
CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE, WHETHER
ACTIVE, PASSIVE OR IMPUTED), PRODUCT LIABILITY, STRICT
LIABILITY OR OTHER THEORY, ARISING OUT OF OR RELATING TO THE
USE OF OR INABILITY TO USE THE SERVICES OR TO THESE TERMS
EXCEED ANY COMPENSATION YOU PAY, IF ANY, TO DIGITAL TRENDS
FOR ACCESS TO OR USE OF THE SERVICES. SOME JURISDICTIONS
DO NOT ALLOW THE LIMITATION OF LIABILITY IN CONTRACTS WITH
CONSUMERS, SO SOME OR ALL OF THESE LIMITATIONS OF LIABILITY
MAY NOT APPLY TO YOU.

# 17. MODIFICATIONS TO THE SERVICES

Digital Trends reserves the right to modify or discontinue, temporarily or
permanently, the Services, or any features or portions thereof, without prior

notice. You agree that Digital Trends will not be liable for any modification, suspension or discontinuance of the Services, or any part thereof.

# 18. DISPUTE RESOLUTION; BINDING ARBITRATION

**Please read the following section carefully because it requires you to arbitrate certain disputes and claims with Digital Trends and limits the manner in which you can seek relief from us, unless you opt out of arbitration by following the instructions set forth below. No class or representative actions or arbitrations are allowed under this arbitration agreement. In addition, arbitration precludes you from suing in court or having a jury trial.**

**No Representative Actions. You and Digital Trends agree that any dispute arising out of or related to these Terms or our Services is personal to you and Digital Trends and that any dispute will be resolved solely through individual action, and will not be brought as a class arbitration, class action or any other type of representative proceeding.**

**Arbitration of Disputes.** Except for small claims disputes in which you or Digital Trends seeks to bring an individual action in small claims court located

in the county of your billing address or disputes in which you or Digital Trends seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, you and Digital Trends waive your rights to a jury trial and to have any dispute arising out of or related to these Terms or our Services resolved in court. Instead, for any dispute or claim that you have against Digital Trends or relating in any way to the Services, you agree to first contact Digital Trends and attempt to resolve the claim informally by sending a written notice of your claim ("Notice") to Digital Trends by email at legal@digitaltrends.com or by certified mail addressed to 111 SW 5th Ave, Suite 1000, Portland, OR 97204. The Notice must (a) include your name, residence address, email address, and telephone number; (b) describe the nature and basis of the claim; and (c) set forth the specific relief sought. Our notice to you will be similar in form to that described above. If you and Digital Trends cannot reach an agreement to resolve the claim within thirty (30) days after such Notice is received, then either party may submit the dispute to binding arbitration administered by JAMS or, under the limited circumstances set forth above, in court. All disputes submitted to JAMS will be resolved through confidential, binding arbitration before one arbitrator. Arbitration proceedings will be held in Multnomah County, Oregon or may be conducted telephonically or via video conference for disputes alleging damages less than $2000, in accordance with the JAMS Streamlined Arbitration Rules and

Procedures ("JAMS Rules"). The most recent version of the JAMS Rules is available on the JAMS website and are hereby incorporated by reference. You either acknowledge and agree that you have read and understand the JAMS Rules or waive your opportunity to read the JAMS Rules and waive any claim that the JAMS Rules are unfair or should not apply for any reason.

You and Digital Trends agree that these Terms affect interstate commerce and that the enforceability of this Section 16 will be substantively and procedurally governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), to the maximum extent permitted by applicable law. As limited by the FAA, these Terms and the JAMS Rules, the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court, including the power to determine the question of arbitrability. The arbitrator may conduct only an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

The arbitrator, Digital Trends, and you will maintain the confidentiality of any arbitration proceedings, judgments and awards, including, but not limited to, all information gathered, prepared and presented for purposes of the arbitration or related to the dispute(s) therein. The arbitrator will have the

authority to make appropriate rulings to safeguard confidentiality, unless the law provides to the contrary. The duty of confidentiality does not apply to the extent that disclosure is necessary to prepare for or conduct the arbitration hearing on the merits, in connection with a court application for a preliminary remedy or in connection with a judicial challenge to an arbitration award or its enforcement, or to the extent that disclosure is otherwise required by law or judicial decision.

You and Digital Trends agree that for any arbitration you initiate, you will pay the filing fee and Digital Trends will pay the remaining JAMS fees and costs. For any arbitration initiated by Company, Digital Trends will pay all JAMS fees and costs. You and Digital Trends agree that the state or federal courts of the State of Oregon and the United States sitting in Multnomah County, Oregon have exclusive jurisdiction over any appeals and the enforcement of an arbitration award.

**Any claim arising out of or related to these Terms or our Services must be filed within one year after such claim arose; otherwise, the claim is permanently barred, which means that you and Digital Trends will not have the right to assert the claim.**

**You have the right to opt out of binding arbitration within 30 days of the date you first accepted the terms of this Section 18 by sending an email**

**to legal@digitaltrends.com.** In order to be effective, the opt-out notice must include your full name and address and clearly indicate your intent to opt out of binding arbitration. By opting out of binding arbitration, you are agreeing to resolve disputes in accordance with Section 19.

If any portion of this Section 18 is found to be unenforceable or unlawful for any reason, (a) the unenforceable or unlawful provision shall be severed from these Terms; (b) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of this Section 18 or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to this Section 18; and (c) to the extent that any claims must therefore proceed on a class, collective, consolidated, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration. Further, if any part of this Section 18 is found to prohibit an individual claim seeking public injunctive relief, that provision will have no effect to the extent such relief is allowed to be sought out of arbitration, and the remainder of this Section 16 will be enforceable.

# 19. GOVERNING LAW AND VENUE

Any dispute arising from these Terms and your use of the Services will be governed by and construed and enforced in accordance with the laws of Oregon, except to the extent preempted by U.S. federal law, without regard to conflict of law rules or principles (whether of Oregon or any other jurisdiction) that would cause the application of the laws of any other jurisdiction. Any dispute between the parties that is not subject to arbitration or cannot be heard in small claims court will be resolved in the state or federal courts of Oregon and the United States, respectively, sitting in Multnomah County, Oregon.

# 20. TERMINATION

Digital Trends reserves the right, without notice and in our sole discretion, to terminate your license to use the Services, and to block or prevent your future access to, and use of, the Services.

# 21. DISPUTE RESOLUTION; BINDING ARBITRATION

If any provision of these Terms shall be deemed unlawful, void or for any reason unenforceable, then that provision shall be deemed severable from these Terms and shall not affect the validity and enforceability of any remaining provisions.