Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Noah J. Larsh (SBN 348541)
Noah@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIGNTECHNICA CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br><br>SWIGART LAW GROUP, APC and<br>Thirty-Six (36) Of Its Putative Clients,<br><br>Defendants. | CASE NO: 24CV1054-W-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANTS SWIGART LAW GROUP, APC AND THIRTY-SIX (36) OF ITS PUTATIVE CLIENTS TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(B)(6) AND FRCP 12(B)(1)**<br><br>Hon. Judge Thomas Whelan<br><br>DATE: September 23, 2024<br>TIME: No oral argument pursuant to local rule<br>CRTRM: C3 |

# TABLE OF CONTENTS

**I.   INTRODUCTION** ................................................................................1

**II.  RELEVANT FACTS AND PROCEDURAL HISTORY** .........................4

   **A. The Parties Have An Agreement To Arbitrate Disputes** .................4

   **B. Overview of Arbitration Demands Filed By Swigart Clients in JAMS**
   .................................................................................................5

      1. The Bermudez Demand .................................................................5

      2. Swigart Files Seven Additional Individual Matters With JAMS .........7

         (a) *Sheri Bate* ................................................................................7

         (b) *Connie Higgins* .........................................................................8

         (c) *Marissa Lozano* ........................................................................8

         (d) *Evelyn Mason* ...........................................................................8

         (e) *Livan Nunez* .............................................................................8

         (f) *Araceli Paramo* .........................................................................9

         (g) *Lee Walker* ..............................................................................9

      3. Swigart Files A Mass Arbitration .................................................9

**III. STANDARD OF REVIEW** ...............................................................10

**IV.  ARGUMENT**

   **A. The Court Should Dismiss Plaintiff's Complaint for Lack of Subject**
   **Matter Jurisdiction Because JAMS Must Decide The Choice of Law**
   **Issue** ................................................................................................12

      1. The Arbitration Agreement Clearly Portrays that Plaintiff and the
      Swigart Clients Intended that the Arbitrator Decide all Procedural and
      Substantive Issues Regarding any Arbitrable Dispute, Including the
      Question of Arbitrability and Choice of Law ..................................12

      2. Plaintiff's Choice-of-Law Dispute is Within the Province of the
      Arbitrator ...............................................................................14

      3. This Court Lacks Subject Matter Jurisdiction Over Swigart Law
      Group, APC ...........................................................................17

   **B. Even Assuming That This Court Did Not Require JAMS To Resolve**
   **Plaintiff's Issues, Plaintiff Has Nonetheless Failed to Establish This**
   **Court's Subject Matter Jurisdiction Over the Claims** ....................18

      1. Diversity Jurisdiction Under 28 U.S.C. § 1332 Does Not Exist
      Between The Parties .................................................................18

      2. Plaintiff's Complaint Does Not Establish A Federal Question Such
      That Would Give Rise to Jurisdiction Under 28 U.S.C. § 1331 .........19

   **C. The Litigation Privilege Cars Plaintiff From Suing Swigart For**
   **Injuries Allegedly Arising From Swigart's Representation of**
   **Swigart's Clients in Arbitrations** .................................................21

**V.   CONCLUSION** ..............................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 11

*Associated Gen'l Contractors v. Metro. Water Dist.*,
159 F.3d 1178 (9th Cir. 1998) ...................................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 11

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ...................................................................... 13

*Esquer v. Educ. Mgmt. Corp.*,
292 F. Supp. 3d 1005 (S.D. Cal. 2017) ........................................................ 13

*Fed'n of African Am. Contractors v. City of Oakland*,
96 F.3d 1204 (9th Cir. 1996) ........................................................................ 10

*Fidelity & Cas. Co. v. Reserve Ins. Co.*,
596 F.2d 914 (9th Cir. 1979) ........................................................................ 19

*Franchise Tax Bd. Of State of Cal. V. Constr. Laborers Vacation Tr. For S. Cal.*,
463 U.S. 1 (1983) .......................................................................................... 20

*Green Tree Financial Corp. v. Bazzle*,
539 U.S. 444 (2003) ...................................................................................... 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ........................................................................................ 12

*Hertz Corp., v. Friend*,
559 U.S. 77 (2010) ........................................................................................ 10

*Kendall v. Vis U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ...................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ...................................................................................... 10

*Law Offices of Richard E. Wilson, LLC v. Smith*,
2022 WL 16647769 (9th Cir. Nov. 3, 2022) .................................................. 3

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ...................................................................... 10

*Louisville & Nashville R. Co. v. Mottley*,
211 U.S. 149 (1908) ...................................................................................... 19

*McCauley v. Ford Motor Co.*,
264 F.3d 952 (9th Cir. 2001) ........................................................................ 10

*Micalizzi v. Rumsfeld*,
247 F.Supp.2d 556 (D. Vt. 2003) .................................................................. 20

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,*
   802 F.2d 362 (9th Cir. 1986) ...................................................................18

*Padilla v. Yoo,*
   678 F.3d 748 (9th Cir. 2012) ...................................................................11

*Rent-A-Ctr., W., Inc. v. Jackson,*
   561 U.S. 63 (2010) ...................................................................................13

*Safe Air for Everyone v. Meyes,*
   373 F.3d 1035 (9th Cir. 2004) .................................................................10

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
   303 U.S. 288 (1990) .................................................................................18

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
   559 U.S. 662 (2010) .................................................................................14

*Ultraflo Corp. v. Pelican Tank Parts, Inc.,*
   823 F.Supp.2d 578 (S.D. Tex. 2011) .......................................................19

*Vimar Seguros v Reasuguros,*
   515 U.S. 528 (1995) .................................................................................16

*Welk Resort Group Inc. v. Reed Hein & Assocs., LLC,*
   2019 WL 1242446 (S.D. Cal. Mar. 18, 2019) ...................................22, 23

**Statutes**

9 U.S.C. § 1 ................................................................................................5, 6
18 U.S.C. § 2510 ...........................................................................................6
28 U.S.C. § 1331 ................................................................................. Passim
28 U.S.C. § 1332 ................................................................................. Passim
28 U.S.C. § 2201 .......................................................................2, 11, 19, 20
Cal. Civ. Code § 47(b) ........................................................................4, 21, 22
Cal. Pen. Code § 631 ....................................................................................6
Oregon Revised Statute § 165.540 ...............................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................10
FRCP 11 ......................................................................................................24
Rule 12(b)(6) ..........................................................................4, 10, 21, 23
Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure .......1, 2

## I.   **INTRODUCTION**

Defendants Swigart Law Group, APC ("Swigart") and Thirty-Six (36) of its Putative Clients ("Swigart Clients" and, together with Swigart, "Defendants") respectfully submit this memorandum of points and authorities in support of their Motion to dismiss the federal Complaint filed by Plaintiff Designtechnica Corporation ("Plaintiff" or "Designtechnica") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Dkt. 1 (Case No. 24-CV-1054-W-AHG) (the "Complaint").

As the parties acknowledge, Plaintiff conducts business under the name "Designtechnica Corporation" and operates the websites www.themanual.com and www.digitaltrends.com. The Swigart Clients, all residing in California, allegedly accessed these websites. In the JAMS arbitration proceedings initiated by Swigart on behalf of the Swigart Clients, Defendants allege that Plaintiff, by installing Meta Pixel on its website, facilitated Meta's interception, recording, and storage of their information without consent, thereby aiding and abetting Meta in violating state privacy laws. JAMS closed eight individual cases of the Swigart Clients due to Respondent's refusal to participate and pay the necessary filing fees and arbitrator retainers. This action left only the mass filing, involving the remaining twenty-eight Swigart Clients. As of today, Respondent has refused to pay the filing fee retainer for the mass filing, issued on April 26, 2024.

In light of Plaintiff's refusal to participate, Defendants' next move was to file a motion to compel arbitration in state court under CCP § 1281.  However, prior to Defendants filing to enforce their respective individual rights, Plaintiff initiated a federal lawsuit against Defendants, seeking declaratory and injunctive relief from the Court. Plaintiff contends that Defendants breached the choice-of-law provision within the Terms of Use by filing arbitration demands with JAMS and invoking the California privacy statute, whereas Oregon law should allegedly govern the dispute. Plaintiff's

claims, as set forth in the Complaint, are devoid of merit and warrant immediate dismissal, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

First, the contract between Plaintiff and its Website Users contains a broad, unambiguous, and unequivocal arbitration clause that explicitly encompasses the present dispute, including the choice-of-law issues raised by Plaintiff. In fact, Plaintiff concedes that this dispute is subject to arbitration before JAMS, as attempted by the Swigart Clients in the first instance. Decl. J. Swigart ¶ 5, Complt. ¶ 9, Ex. B. The dispute resolution provision in Plaintiff's own Website's Terms of Use which Plaintiff invoked in and attached to its Complaint ("Arbitration Agreement"), unambiguously states that "[a]s limited by the FAA, these Terms and the JAMS Rules, the arbitrator would have 'exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court, including the power to determine the question of arbitrability.'" *Id.* This provision leaves no doubt under the law that the determination of the choice of law falls within the exclusive purview of JAMS and must be decided by an arbitrator.

Moreover, even setting aside the agreement to arbitrate in JAMS, Plaintiff has failed to establish this Court's subject matter jurisdiction over the claims. Diversity jurisdiction under 28 U.S.C. § 1332 does not exist as the amount in controversy does not, and cannot, exceed $75,000. Plaintiff's claims are, at heart, breach of contract claims, which cannot conceivably give rise to damages exceeding the legal threshold. Plaintiff fails to even include plea for monetary damages, and, instead, submits conclusory statements regarding jurisdiction. Furthermore, this Court also lacks jurisdiction under 28 U.S.C. § 1331, as The Declaratory Judgement Act, 28 U.S.C. § 2201 cannot provide the basis for federal jurisdiction.

Second, even beyond the Court lacks subject matter jurisdiction to adjudicate the choice-of-law issue, Plaintiff also attempted to conceal that it had forfeited its objection to arbitrating that issue in what Plaintiff characterized as "identical" arbitration matters. Specifically, Plaintiff fails to disclose that Plaintiff actively participated in the pre-trial

phase of the lead individual arbitration matter (Marc Bermudez)—including a request to the JAMS arbitrator to resolve Plaintiff's "dispositive" motion to dismiss based on, among other things, the choice-of-law issue.  See *Law Offices of Richard E. Wilson, LLC v. Smith*, 2022 WL 16647769, at *1 (9th Cir. Nov. 3, 2022) ("Appellants here agreed to an arbitration schedule, actively participated in pre-arbitration discovery regarding documents related to the merits of the contract dispute, and submitted a discovery dispute to the arbitrator. Appellants did not clearly object to arbitration until after they received an unfavorable ruling from the arbitrator ordering them to produce documents. . . .  This court has 'long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result.' . . .  Because of Appellants' active participation in the arbitration until receiving the unfavorable ruling, Appellants waived the right to object to arbitrability.").

Accordingly, Plaintiff's Complaint asks this Court to determine the arbitrability of Swigart Clients' claims despite Plaintiff's own voluntary participation and request for dispositive rulings in the first of several similar JAMS arbitration proceedings to which Plaintiff now objects, deliberately disregard this history as well as the JAMS arbitrator's ruling in that case that Oregon law applied, and it was permissible for amended demands to be filed asserting statutory claims under Oregon law. Plaintiff's Complaint contradicts its own acts, volitions, and documents.

The intentional omission of these facts—including Plaintiff's own submission of the choice-of-law question to the JAMS arbitrator rather than a court, and the results of that arbitrator's determination regarding the application of Oregon law—in itself demonstrates that Plaintiff attempted to avoid the effect of its own waiver of its challenge to the arbitrator's authority to deciding what law governed the disputes. Plaintiff knew all of this when Plaintiff essentially improperly continued to concurrently litigate the choice-of-law issue against the Swigart Clients while also failing to refer to,

let alone attempt to explain, the procedural history in the Bermudez matter in the Complaint.

Finally, while Plaintiff has asserted claims not only against the named thirty-six (36) Swigart Clients on whose behalf Swigart filed arbitration demands before JAMS, the law is clear the litigation privilege (Cal. Civ. Code § 47(b)) bars Plaintiff from suing an adverse law firm for injuries allegedly arising from Swigart's representation in California of its clients in those arbitrations. Plaintiff relies on little more than an allegation that "[u]pon information and belief," Swigart "has filed thousands of similarly meritless arbitration claims and is utilizing arbitration fees as a mechanism to pressure defendants to pay nuisance value settlements to resolve frivolous claims" (including claims for which the clients purportedly suffered no actual damages but seek statutory penalties). Decl. J. Swigart ¶ 5, Complt. ¶¶ 18-21. However, as further discussed below, the litigation privilege precludes Plaintiff from suing Swigart for performing legal services for Swigart's clients, and it now requires Swigart's dismissal from the Complaint pursuant to Rule 12(b)(6).

As such, Defendants respectfully request this court dismiss Plaintiff's complaint as the court lacks subject matter jurisdiction to hear the "controversy" raised by Plaintiff.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A. The Parties Have An Agreement To Arbitrate Disputes

Defendants instituted the first action, and subsequent individual filings, based on the arbitration agreement contained within Plaintiff's Terms of Use found on Plaintiff's websites. The existence of this agreement is undisputed, as Plaintiff concedes. Decl. J. Swigart ¶ 5, Complt., ¶ 9, Ex. B. The dispute resolution clause is found in Plaintiff's Terms of Use dated January 3, 2020 (the "Arbitration Agreement"). Compl., Ex. B, § 18. It states the following in relevant part:

> You and Digital Trends agree that these Terms affect interstate commerce and that the enforceability of this Section 16 will be substantively and procedurally governed by the

Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), to the maximum extent permitted by applicable law. *As limited by the FAA, these Terms and the JAMS Rules, the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court, including the power to determine the question of arbitrability.* The arbitrator may conduct only an individual arbitration and may not consolidate more than one individual's claims, preside over any type of class or representative proceeding or preside over any proceeding involving more than one individual.

The arbitrator, Digital Trends, and you will maintain the confidentiality of any arbitration proceedings, judgments and awards, including, but not limited to, all information gathered, prepared and presented for purposes of the arbitration or related to the dispute(s) therein. The arbitrator will have the authority to make appropriate rulings to safeguard confidentiality, unless the law provides to the contrary. The duty of confidentiality does not apply to the extent that disclosure is necessary to prepare for or conduct the arbitration hearing on the merits, in connection with a court application for a preliminary remedy or in connection with a judicial challenge to an arbitration award or its enforcement, or to the extent that disclosure is otherwise required by law or judicial decision.

You and Digital Trends agree that for any arbitration you initiate, you will pay the filing fee and Digital Trends will pay the remaining JAMS fees and costs.] . . .

Decl. J. Swigart ¶ 5, Complt., Ex. B, Terms of Use § 18 (emphasis added).

**B. Overview Of Arbitration Demands Filed By Swigart Clients in JAMS**

Each of the arbitration matters at issue in this case arises from the same factual allegations.

1. <u>The Bermudez Demand</u>

Defendant Marc Bermudez ("Bermudez") filed his individual arbitration with JAMS pm April 13, 2023, alleging Plaintiff, in relevant part "violated the Federal

Wiretap Act, 18 U.S.C. § 2510 et seq and the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631 et seq by intercepting and recording Claimant's electronic communications with Respondent's website, then disclosing the information to Meta Platforms, Inc. dba Facebook." Decl. J. Swigart ¶ 6 Ex B. (the "Bermudez Demand"). On August 11, 2023, Plaintiff filed its response to the Bermudez Demand, whereby asking JAMS to "set the arbitration loca[le] for Multnomah, Oregon, and further order that Oregon State law apply to this proceeding." Decl. J. Swigart ¶ 7, Ex. B, § 1. In Plaintiff's response, Plaintiff again notes the presence of the arbitration agreement contained within the terms of use. *Id*, at § 3.

Following a preliminary hearing conference on January 3, 2024, with Arbitrator Charles Dick, Jr. with JAMS, Arbitrator Dick issued "Preliminary Hearing Order No. 1" containing therein the statement "All issues are arbitrable." Decl. J. Swigart ¶ 8, Ex. D, pg. 4. On January 10, 2024, Bermudez filed an Amended Demand, abandoning his Federal Wiretap Act claim and pontificating upon his CIPA claims. On April 19, 2024, following a briefing schedule on Plaintiff's dispositive motion, Arbitrator Dick issued an order denying the motion without prejudice, but confirmed the application of Oregon state law and gave Bermudez leave to file a Second Amended Demand asserting such claims under Oregon substantive law by Friday, May 3, 2024. Decl. J. Swigart ¶ 9, generally, Ex. E.

On April 23, 2024, JAMS issued a further invoice to Plaintiff in the amount of $4,407.00. Decl. J. Swigart ¶ 10, Ex. F. On May 3, 2024, in accordance with Arbitrator Dick's order, Bermudez submitted his Second Amended Demand, alleging claims under Oregon Revised Statute § 165.540, along with common law causes of action. Decl. J. Swigart ¶ 11, Ex. G. Further on May 3, 2024, JAMS issued another invoice to Respondent in the amount of $12,700.00. Decl. J. Swigart ¶ 12, Ex. H. Both invoices remain unpaid as of the date of this submission. Due to Plaintiff's failure to pay both invoices, JAMS issues a notice of an administrative stay, stating "JAMS has not received the $6,000 necessary to proceed with this arbitration from [Plaintiff]. As a

result, this matter is on administrative stay." Decl. J. Swigart ¶ 13, Ex. I. Finally, on June 13, 2024, JAMS issued a further letter, removing the merits hearing from calendar because "JAMS has not received all fees in the above-referenced arbitration." Decl. J. Swigart ¶ 14, Ex. J.

Interestingly, on June 20, 2024, Plaintiff submitted a motion to stay the Bermudez matter on JAMS Access; however, JAMS notified Respondent that such documents could not be reviewed by the arbitrator under the "remaining retainer [is] on account" referencing Plaintiff's unpaid retainers. Decl. J. Swigart ¶ 15, Ex. K. As of the date of this submission, the Bermudez matter remains on administrative stay due to Plaintiff's failure to pay JAMS invoices.

2.   Swigart Files Seven Additional Individual Matters With JAMS

On February 23, 2024, Swigart filed seven more individual arbitrations with JAMS against Plaintiff on behalf of seven individuals: Defendant Sheri Bate ("Bate"); Defendant Connie Higgins ("Higgins"); Defendant Marissa Lozano ("Lozano"); Defendant Evelyn Mason ("Mason"); Defendant Livan Nunez ("Nunez"); Defendant Araceli Paramo ("Paramo"); and Defendant Lee Walker ("Walker"). Each of the seven individual Defendants alleged Plaintiff violated CIPA through the same actions explained in the Bermudez demand.

*(a) Sheri Bate*

In the Bate matter, on April 11, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 16, Ex. L. On April 25, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 17, Ex. M. Finally, on May 29, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 18, Ex. N.

///

///

///

*(b) Connie Higgins*

In the Higgins matter, on March 19, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 19, Ex. 0. On April 2, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 20, Ex. P. Finally, on May 7, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 21, Ex. Q.

*(c) Marissa Lozano*

In the Lozano matter, on March 19, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 22, Ex. R. On April 2, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 23 Ex. S. Finally, on May 7, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 24, Ex. T.

*(d) Evelyn Mason*

In the Mason matter, on March 18, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 25, Ex. U. On April 2, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 26, Ex. V. Finally, on May 7, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 27, Ex. W.

*(e) Livan Nunez*

In the Nunez matter, on April 5, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 28, Ex. X. On April 23, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 29, Ex. Y. Finally, on May 28, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 30, Ex. Z.

*(f) Araceli Paramo*

In the Paramo matter, on April 5, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 31, Ex. AA. On April 23, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 32, Ex. AB. Finally, on May 28, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 33, Ex. AC.

*(g) Lee Walker*

In the Walker matter, on April 5, 2024, JAMS issued Plaintiff an invoice in the amount of $2,000 for Plaintiff's filing fee. Decl. J. Swigart ¶ 34, Ex. AD. On April 23, 2024, JAMS issued a "Final Request for Filing Fee From Respondent" reminding Plaintiff the invoice was still due. Decl. J. Swigart ¶ 35, Ex. AE. Finally, on May 28, 2024, after Plaintiff failed to participate and pay the required JAMS invoice, JAMS closed the matter due to Respondent's failure. Decl. J. Swigart ¶ 36, Ex. AF.

As of the date of this submission, Plaintiff has failed to pay the required filing fee invoices, and JAMS has kept each individual matter filed on February 23, 2024, closed it the JAMS system due to Plaintiff's failures.

### 3. Swigart Files A Mass Arbitration

On April 5, 2024, Swigart filed the remainder of the Swigart Clients via a mass arbitration filing, properly serving Plaintiff. Decl. J. Swigart ¶ 37, Ex. AG. On April 26, 2024, JAMS confirmed Defendants paid Defendants' portion of the filing fee for the mass filing and further issued an invoice to Plaintiff for Plaintiff's portion of the filing fee, totaling $54,000. Decl. J. Swigart ¶ 38, Ex. AH. On May 20, 2024, JAMS issued a "Final Request For Filing Fee" letter to all parties, indicating that if Plaintiff refused to pay the invoice, "within 30 days, JAMS will close the file." Decl. J. Swigart ¶ 39, Ex. AI. On the deadline for Plaintiff's invoice, Plaintiff, instead, filed a Motion to Stay the arbitration proceedings. See Decl. J. Swigart ¶ 40, Ex. AJ.

Although Plaintiff plainly concedes a valid arbitration agreement exists within its Terms of Use, further exemplified by Plaintiff's participation in the Bermudez matter, Plaintiff refused to adhere to those procedures. Now, under the threat of greater fees and costs, Plaintiff seeks relief from the Court, which, as Defendants note, is the incorrect venue for this dispute, as this court lacks any subject matter jurisdiction over the parties.

### III.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). Plaintiff, as the "party asserting federal jurisdiction . . . bears the burden of proving the case is properly filed in federal court." *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001). The Court can only preside over cases which the Constitution or Congress authorizes the Court to preside over, including cases involving diversity of citizenship and cases involving a federal question. *See, Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion brought under 12(b)(1) may be either "facial" or factual." *Safe Air for Everyone v. Meyes*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack is "facial" on the allegations of the complin, the factual allegations of the complaint are taken as true. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Where an attack is "factual," the moving party questions the veracity of the allegations that "would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. When such a factual attack is made, the "plaintiff must support [the] jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgement context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); quoting *Hertz Corp., v. Friend*, 559 U.S. 77, 96-97 (2010).

Federal Rule of Civil Procedure 12(b)(6), in turn, provides for dismissal of an action where Plaintiff's complaint "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Thus, to survive a motion under Fed. R. Civ. P.

12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all well-pleaded factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Id.*

For a motion under 12(b)(6), "all well-pleaded allegations of material fact [are accepted as true] and contstrue[d] in the light most favorable to the non-moving party." *Padilla v. Yoo*, 678 F.3d 748, 757 (9th Cir. 2012). Furthermore, "conclusory allegations of law and unwarranted inferences" are insufficient to support a claim. *Associated Gen'l Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). To survive such a motion, the complaint must state "evidentiary facts which, if true, will prove [the claim]." *Kendall v. Vis U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Plaintiff has failed to establish that this Court possesses subject matter jurisdiction over the parties. Pursuant to an agreement between Plaintiff and the Swigart Clients, JAMS is the correct forum to handle the disputes between Plaintiff and the Swigart Clients. Moreover, there exists no reasonable or lawful basis for Plaintiff to file suit against Swigart, in this forum, or in any other. Furthermore, Plaintiff's complaint is replete with mere conclusory assertions that lack the necessary factual foundation. Specifically, Plaintiff has not, and indeed cannot, adequately plead that the amount in controversy exceeds the jurisdictional threshold of $75,000. Additionally, the Plaintiff's invocation of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., is nothing more than a superficial attempt to fabricate federal jurisdiction. This Court should recognize and reject Plaintiff's illusory tactics and dismiss the complaint accordingly.

Moreover, Plaintiff's claims against Swigart have no basis in law or fact. As discussed further below, the litigation privilege bars Plaintiff's complaint against Swigart as a matter of law. Even assuming the litigation privilege does not apply – it does - Plaintiff's complaint against Swigart fails to establish this Court's jurisdiction

over any claim against Swigart. Plaintiff's incorporation of Swigart in the complaint appears more as a result of Plaintiff's personal vendetta against Swigart, rather than a claim based in fact and law.

Even assuming, arguendo, that this Court were to determine it possesses subject matter jurisdiction—which it does not—Plaintiff's claims still warrant dismissal. The complaint fails to articulate a viable cause of action upon which relief can be granted against the thirty-six individual Defendants and the law firm which represents them.

## IV.   <u>ARGUMENT</u>

### A. The Court Should Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction Because JAMS Must Decide The Choice of Law Issue

1. <u>The Arbitration Agreement Clearly Portrays that Plaintiff and the Swigart Clients Intended that the Arbitrator Decide all Procedural and Substantive Issues Regarding any Arbitrable Dispute, Including the Question of Arbitrability and Choice of Law</u>

Plaintiff concedes that "any dispute between the Websites [operated by Plaintiff] and a visitor to the Websites is subject to mandatory binding arbitration administered by JAMS."  Decl. J. Swigart ¶ 5, Complt. ¶ 12.  Plaintiff also does not dispute the language in the Arbitration Agreement providing that "[a]s limited by the [Federal Arbitration Act] [(FAA)], the[ ] Terms [of Use] and the JAMS Rules, <u>the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any dispute and to grant any remedy that would otherwise be available in court</u>, including the power to determine the question of arbitrability."  Decl. J. Swigart ¶ 5, Complt., Ex. B, § 18 ("Dispute Resolution; Binding Arbitration") (emphasis added).  Furthermore, Plaintiff acknowledges (as it must) that "the Websites' Terms [of Use] require [Defendants] to arbitrate the[ir] [c]laims with JAMS."  Id. at ¶ 17.

As the Supreme Court instructs, "a court may not decide" "an arbitrability question" that the parties have "clearly and unmistakably delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69-71 (2019).  The parties

have so delegated here.  As noted above, the parties clearly and unmistakably agreed that "the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any dispute," demonstrating their intent for a JAMS arbitrator to decide all issues other than whether an arbitration agreement exists.  See also *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (affirming delegation where agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the enforceability of this Agreement").

The Arbitration Agreement at issue in this case also incorporates the JAMS arbitration rules, which the Ninth Circuit has held is "clear and unmistakable evidence" that the "parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); see also *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1013 (S.D. Cal. 2017) (holding that the parties agreed to delegate threshold arbitrability questions by "incorporat[ing] JAMS's procedural rules").  JAMS Rules empower the arbitrator to decide the issues of arbitrability. JAMS Comprehensive Arbitration Rules & Procedures ("JAMS Rules"), Rule 11(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator"). Swigart Decl. J. Swigart ¶ 41, Ex. AK.

Plaintiff and the Swigart Clients entered into a contract for JAMS to resolve all consumer disputes, a fact Plaintiff does not dispute – a contract which gives JAMS arbitrators the exclusive authority to handle disputes. JAMS confirmed this position in addressing Plaintiff's motion to stay, stating, "The Terms [governing the arbitration between Plaintiff and Swigart Clients] provide for arbitration at JAMS" and "Under the JAMS Rules, jurisdictional and arbitrability disputes shall be submitted to and ruled on by the arbitrator [who] has the authority to determine . . . the issues as a preliminary matter." Swigart Decl. J. Swigart ¶ 42, Ex. AL.

Pursuant to the authoritative decision in *Henry Schein*, this Court is without jurisdiction to adjudicate the matters raised in Plaintiff's complaint. The issues at hand between the Plaintiff and the Swigart Clients fall squarely within the exclusive jurisdiction of JAMS arbitration, as mandated by the binding arbitration agreements in place. Moreover, pursuant to an agreement to arbitrate between Plaintiff and the Swigart Clients, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's complaint.

### 2. Plaintiff's Choice-of-Law Dispute is Within the Province of the Arbitrator

Plaintiff makes no attempt to explain how the broad language of the Arbitration Agreement—which, as noted, expressly gives the JAMS arbitrator "exclusive authority to make all procedural and substantive decisions regarding any dispute" (Compl., Ex. B, § 18)—would not also preclude Plaintiff from invoking this Court's jurisdiction for the purpose of bypassing the authority of arbitrators in specific JAMS matters regarding the choice of law that would govern the parties' disputes.  Yet, that is precisely what Plaintiff seeks to do here.

Among other things, Plaintiff appears to argue that because it is invoking Section 19 of the Terms of Use (Compl., Ex. B, § 19 ("Governing Law and Venue")) rather than relying solely on language in Section 18 (id., § 18 ("Dispute Resolution; Binding Arbitration")), there is no conflict between its claims for breach of the Terms of Use and the arbitrators' authority under the Federal Arbitration Act ("FAA").  However, this makes no sense and is contrary to the entire notion of arbitration as an alternative to litigation, wherein parties are "generally free to structure their arbitration agreements as they see fit" and "agree to limit the issues arbitrated" and "agree on rules under which an arbitration will proceed," as well as "with whom they choose to arbitrate their disputes." *Stolt-Nielsen  S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (citations and internal quotation marks omitted).

Plaintiff asserts that the arbitration demands filed by Swigart with JAMS on behalf of the thirty-six (36) Swigart Clients named along with Swigart as Defendants

14

violated Section 19 of the Terms of Use (the choice-of-law provision) because that provision states that "[a]ny dispute arising from these Terms and [the claimant's] use of [Plaintiff's] Services will be governed by and construed and enforced in accordance with the laws of Oregon," yet the demands each "ma[de] identical cookie-cutter allegations [that] . . . , among other things, . . . each [Swift Client's . . . ] privacy was violated under" the California Invasion of Privacy Act ("CIPA"), "a California state statute," by "visiting and browsing the Websites."  Decl. J. Swigart ¶ 5, Complt. ¶¶ 13-16.

While the Plaintiff's federal court action seeks declaratory and injunctive relief—including a stay of arbitration proceedings—related to Defendants' purported breach of the Terms of Use that stipulate Oregon law as governing (see Complaint ¶ 17), the Complaint fails to elucidate the basis for this Court's subject matter jurisdiction over the choice-of-law issue. Notably absent is any rationale underpinning this Court's jurisdiction. As previously noted, Plaintiff omits the critical detail that the JAMS arbitrator in the initial and most advanced arbitration proceeding (Bermudez) concurred with Plaintiff's position that Oregon law governs the dispute. Moreover, the arbitrator allowed Bermudez to file a Second Amended Demand in May 2024, asserting violations of Oregon statutes. Decl. J. Swigart ¶ 9, Ex. E., see § 4 Arbitrator's Order.

However, after failing to secure a dismissal in the Bermudez matter, Plaintiff subsequently sought to circumvent the evidentiary hearing scheduled for June 2024 by refusing to pay its JAMS invoices for the arbitrator. Decl. J. Swigart ¶ 13, 9, Ex. I. Plaintiff inexplicably concealed these proceedings from the Court, feigning ignorance of their occurrence, and shifted focus to filing in this Court, presumably to preempt the issues looming in the remaining arbitrations. Notably, no arbitrator has been assigned in any of the pending matters, rendering Plaintiff's complaint, at best, premature.

Furthermore, even if there were any doubt as to whether all questions, including arbitrability, were delegated to the JAMS arbitrator under the Arbitration Agreement, as the Supreme Court has in any event stated, the FAA requires that once a court has

determined that the parties have entered into a valid and binding arbitration agreement, the court must defer to the arbitrator on such issues as choice of law and venue.  See *Vimar Seguros v Reasuguros*, 515 U.S. 528, 541 (1995) (holding that courts must "reserve judgment on the choice-of-law question" when considering a motion to compel arbitration" as [the choice-of-law question] must be decided in the first instance by the arbitrator").

Given the circumstances, Plaintiff unequivocally fails to refute—and indeed cannot refute—that the parties to the Arbitration Agreement expressly contemplated the arbitrability of the choice-of-law provision, as well as various substantive and procedural issues that might arise. The clear intent of the parties was to delegate disputes regarding choice of law, venue, and other pertinent matters to the arbitrator.  See also *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (holding that while courts might not defer to an arbitral tribunal's resolution of such "gateway" issues as whether there is a valid arbitration agreement between the parties or whether a binding arbitration clause applies to a particular dispute, other issues, including "what kind of arbitration proceeding the parties agreed to" and issues "concern[ing] contract interpretation and arbitration procedures," can and should be left to arbitrators to decide).

Therefore, because Plaintiff is requesting this Court to adjudicate a choice-of-law issue that has unequivocally been delegated to the JAMS arbitrator, and because Plaintiff seeks to disregard the fact that the arbitrator in the Bermudez matter has already determined this very issue—concluding that while Oregon law governs the dispute, the Swigart Client could and did file an amended demand asserting claims under Oregon statutory law—the Complaint should be dismissed for lack of subject matter jurisdiction.

///

///

///

### 3. <u>This Court Lacks Subject Matter Jurisdiction Over Swigart Law Group, APC</u>

At the outset, there exists no valid or enforceable arbitration agreement between the Plaintiff and Swigart. The absence of such an agreement is not a mere procedural oversight; it strikes at the very heart of the jurisdictional authority in this matter. Arbitration is a matter of consent, not coercion, and without mutual assent to arbitrate disputes, any attempt to compel arbitration is legally impermissible. The foundational principle that arbitration is rooted in the parties' agreement necessitates that an enforceable contract exists between them. Here, no such contract exists. Plaintiff cannot unilaterally impose arbitration on Swigart, nor can Plaintiff rely on arbitration provisions that were never agreed to by Swigart. Any assertion to the contrary is without legal basis, rendering the claims against Swigart not only non-arbitrable but also illusory. Consequently, Swigart must be dismissed from this proceeding as a matter of law.

Moreover, and discussed further below, Plaintiff has unequivocally failed to demonstrate this Court's jurisdiction over Swigart. Despite the Plaintiff's contentions, the complaint does not meet the jurisdictional requirements necessary for this Court to exercise authority over Swigart.

Plaintiff has not established diversity jurisdiction under either 28 U.S.C. § 1332 or 28 U.S.C. § 1331. The complaint is devoid of any factual basis to demonstrate that the amount in controversy between Plaintiff and Swigart meets the legal threshold required for this Court to exercise diversity jurisdiction. Without a clear statement of damages or any substantive proof of an amount in controversy that satisfies the statutory minimum, the Plaintiff's claims fall short of invoking this Court's jurisdiction.

Furthermore, the complaint fails to present a federal question sufficient to confer jurisdiction under 28 U.S.C. § 1331. Plaintiff's allegations do not arise under any federal statute, constitutional provision, or treaty that would warrant federal court intervention. In the absence of a substantial federal question or a sufficient amount in controversy,

this Court lacks subject matter jurisdiction over Swigart. Thus, based on these jurisdictional deficiencies, this Court is compelled to dismiss the claims against Swigart for lack of subject matter jurisdiction.

**B. Even Assuming Arguendo That This Court Did Not Require JAMS to Resolve Plaintiff's Issues, Plaintiff Has Nonetheless Failed to Establish This Court's Subject Matter Jurisdiction Over the Claims**

Plaintiff's complaint cannot meet the burden of establishing this Court's jurisdiction under either 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1332 (diversity jurisdiction).

1. Diversity Jurisdiction Under 28 U.S.C. § 1332 Does Not Exist Between The Parties

Subject matter jurisdiction exists under 28 U.S.C. § 1332 (diversity jurisdiction) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." The Court may find jurisdiction where a claim is made in good faith; however, if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed" then the suit requires dismissal. *St. Paul Mercury Indem. Co. v. Red Cab Co.,*, 303 U.S. 288, 289 (1990). As the Ninth Circuit notes, a situation requiring dismissal occurs "when independent facts show that the amount of damages claimed was merely to obtain federal court jurisdiction." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.,* 802 F.2d 362, 363 (9th Cir. 1986). Such is the situation we have before us.

Plaintiff initiated this lawsuit seeking declaratory and injunctive relief, presenting two claims: (1) the enforceability of Plaintiff's Website Terms, and (2) the enforceability of the choice-of-law provision within those terms. Decl. J. Swigart ¶ 5, Compl. ¶¶ 22-40. Significantly, the Complaint fails to include any assertion of monetary damages or to demonstrate how these claims could potentially generate monetary damages meeting the $75,000 jurisdictional threshold. Moreover, Plaintiff's "Prayer for Relief" explicitly omits any request for monetary damages, except for reasonable costs

and attorney's fees. *Id.* at ¶¶ 1-6. The only instance where Plaintiff attempts to attribute a monetary value is within a conclusory statement regarding the Court's jurisdiction. *Id.* at ¶ 2. This omission underscores the insufficiency of Plaintiff's claims to satisfy the monetary requirement, thereby undermining the basis for federal jurisdiction in this matter.

Moreover, no conceivable amendment to Plaintiff's complaint could cure the Court's lack of jurisdiction under 28 U.S.C. § 1332, as nothing in the Plaintiff's allegations establishes a "good faith" basis for claiming damages. Plaintiff's entire lawsuit is fundamentally rooted in its dissatisfaction with the JAMS arbitration process, which, as previously noted, concluded favorably for the Plaintiff in the Bermudez matter. The declaratory and injunctive relief that Plaintiff seeks, as a matter of law, cannot in good faith satisfy the amount-in-controversy requirement exceeding $75,000. Consequently, this Court unequivocally lacks jurisdiction under 28 U.S.C. § 1332, reinforcing the necessity to dismiss the complaint for want of federal jurisdiction.

### 2. Plaintiff's Complaint Does Not Establish A Federal Question Such That Would Give Rise to Jurisdiction Under 28 U.S.C. § 1331

With recognition under the well-pleaded complaint rule, a suit "arises under" federal law "only when the plaintiff's statement of his own cause of action shows that is based upon [federal law]." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Plaintiff attempts to confer this Court's jurisdiction over the claims under the Declaratory Judgement Act, 28 U.S.C. §§ 2201, et seq; however, Plaintiff's assertions are not legally sound. As provided by 28 U.S.C. § 1331, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

The Ninth Circuit has addressed this issue and found, "The Declaratory Judgement Act, 28 U.S.C. § 2201, does not itself confer federal subject matter jurisdiction." *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914 (9th Cir. 1979). Such a conclusion was reached in neighboring states. *See, generally*, *Ultraflo Corp. v.*

*Pelican Tank Parts, Inc.*, 823 F.Supp.2d 578 (S.D. Tex. 2011); *Micalizzi v. Rumsfeld*, 247 F.Supp.2d 556 (D. Vt. 2003). Without an independent basis for this Court's subject matter jurisdiction, 28 U.S.C. §§ 2201 alone is insufficient to provide subject matter jurisdiction.

Moreover, federal question exists only "if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law." *Franchise Tax Bd. Of State of Cal. V. Constr. Laborers Vacation Tr. For S. Cal.*, 463 U.S. 1, 27-28 (1983). At the core of Plaintiff's complaint is a straightforward breach of contract claim, wherein Plaintiff seeks an order from this Court to enforce the original contract between the parties and specific provisions contained therein. Plaintiff's attempt to invoke the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, is fundamentally flawed. The Declaratory Judgment Act does not independently confer jurisdiction; it merely provides a remedy where jurisdiction already exists. Since Plaintiff's claims do not satisfy the requirements for federal jurisdiction under 28 U.S.C. § 1332 or any other federal statute, the invocation of the Declaratory Judgment Act is misplaced and cannot establish jurisdiction.

Therefore, Plaintiff has not established this Court's subject matter jurisdiction over the claims. Under 28 U.S.C. § 1332, Plaintiff cannot, in good faith, allege an amount in controversy exceeding $75,000, a prerequisite for diversity jurisdiction. Additionally, Plaintiff has failed to establish this Court's subject matter jurisdiction under 28 U.S.C. § 1331, as the complaint does not present a federal question or arise under federal law. Without satisfying either jurisdictional basis, Plaintiff's claims cannot be entertained by this Court. Therefore, the Court must dismiss Plaintiff's claims for lack of subject matter jurisdiction, as neither statutory requirement for federal jurisdiction is met.

///

///

///

### C. The Litigation Privilege Bars Plaintiff From Suing Swigart For Injuries Allegedly Arising From Swigart's Representation of Swigart's Clients in Arbitrations

Plaintiff has asserted claims against Swigart, the law firm that filed arbitration demands with JAMS on behalf of the named thirty-six (36) clients, based on the following contentions: "[u]pon information and belief," those Swigart Clients "have suffered no actual damages and the[ir] [c]laims rely solely on" CIPA's statutory penalties; Swigart is "utilizing a strategy of filing large numbers of baseless claims in contravention of the Terms' choice of law provision in an effort to compel [Plaintiff] and similar targets to pay to settle claims rather than incur significant arbitration fees"; "[a] lack of availability of statutory damages, in the absence of any actual damages suffered by a party, [wa]s an insufficient basis to decline enforcement of an agreement's choice of law provision"; and "[u]pon information and belief," Swigart "has filed thousands of similarly meritless arbitration claims and is utilizing arbitration fees as a mechanism to pressure defendants to pay nuisance value settlements to resolve frivolous claims." Decl. J. Swigart ¶ 5, Complt. ¶¶ 18-21.

As a fundamental principle of law, the litigation privilege under California Civil Code § 47(b) unequivocally shields attorneys from third-party lawsuits when performing legal services on behalf of their clients. This doctrine is rooted in the policy of encouraging candid and unfettered legal representation. Consequently, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Swigart's dismissal from the Complaint is not merely appropriate but legally mandated. The litigation privilege serves as an absolute defense, precluding any claims against Swigart arising from his professional conduct within the scope of representing his client. Therefore, maintaining the integrity of the litigation process and upholding the privileges accorded by California law necessitate the immediate dismissal of Swigart from this action.

The litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3)

to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.  See *Welk Resort Group Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 1242446, at *5 (S.D. Cal. Mar. 18, 2019) (citation omitted); see id. at *5-*6 (noting that "[i]n its application to communications made in a 'judicial proceeding,' section 47(b) is not limited to statements made in a courtroom" or "in pleadings" but also "statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit") (citation omitted).  The Complaint unequivocally targets Swigart solely in his capacity as the attorney for the thirty-six (36) named clients. Each alleged "wrong" stems directly from the legal services Swigart provided to these Defendants, specifically related to the JAMS arbitration matters initiated by Swigart on behalf of his clients. This clear linkage underscores that all actions in question are intrinsically tied to Swigart's professional duties and obligations as legal counsel. Consequently, under the doctrine of litigation privilege, which is designed to protect attorneys from liability when acting within the scope of their legal representation, these claims against Swigart lack any legal foundation. The privilege enshrined in California Civil Code § 47(b) is intended to ensure that attorneys can advocate zealously for their clients without fear of subsequent litigation.

As this Court has recognized, "[i]f there is no dispute as to the operative facts, the applicability of the litigation privilege is a question of law."  *Welk Resort Group Inc.*, 2019 WL 1242446, at *7 (citation omitted).  Furthermore, on the face of the Complaint, application of the litigation privilege here is also supported by the policies the privilege is intended to advance:

> It is not difficult to imagine the consequences likely to follow in the wake of a rule permitting the defendant in a civil action to institute parallel litigation seeking to impose liability on the attorney for the adverse party based on the circumstances surrounding the formation of the attorney-client relationship that led to the filing of the original suit. Apart from provoking yet another round of litigation, all of

> the evils identified in our prior cases as accompanying retaliatory suits based on litigation-related communications would be promoted by such a tactic. The impairment of colorable claims by disrupting access to counsel, the intimidating effect on attorneys of facing an almost certain retaliatory proceeding, the distractions inherent in requiring counsel to deal with defending a personal countersuit as well as the predicate action and, in general, the dampening effect on the unobstructed presentation of claims which we have identified as the central value supporting limitations on other derivative tort actions, apply with equal force to this suit.

*Id.* (citation omitted).

Additionally, as a matter of fact, this Court may take judicial notice of the JAMS arbitrator's ruling in the Bermudez matter, the initial arbitration proceeding filed by Swigart on behalf of a client. Although Plaintiff intentionally omitted this information, the arbitrator determined that even if Oregon law governed the parties' dispute, Bermudez retained the right to file an amended demand asserting claims under Oregon privacy statutes. This Court may also take judicial notice of Bermudez's subsequent amended demand filed in May 2024, as directed by the arbitrator. Decl. J. Swigart, ¶¶ 6, 7, Ex. F; see also Ex. G. This judicial notice is significant, as it demonstrates that the JAMS arbitrator, in denying Plaintiff's motion to dismiss based on the choice-of-law issue, did not find Bermudez's previous reliance on the California Invasion of Privacy Act (CIPA) to render his claim meritless. The arbitrator's decision underscores that Bermudez's claims retained legal viability, further reinforcing the notion that Swigart's actions, performed within the scope of his legal representation, are protected by litigation privilege.

Therefore, in light of these judicially noticeable facts and the governing legal principles, Swigart's dismissal from the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is both legally sound and necessary.

## V.   **CONCLUSION**

For the reasons discussed above, Plaintiff and Plaintiff's counsel have filed claims that are not warranted by existing law and are frivolous. In accordance with

23

California law and in the interests of judicial economy, Defendants respectfully request that the Court dismiss all of Plaintiff's claims against Defendants. Furthermore, Defendants will request more affirmative relief under FRCP 11 through the filing of a separate motion, including a request for attorneys' fees incurred due to Plaintiff's misconduct, and will request the Court impose any additional sanctions deemed appropriate to deter future misconduct by Plaintiff and their counsel.

Respectfully submitted,

**SWIGART LAW GROUP**

Date:  August 12, 2024           By:  *s/ Joshua Swigart*
                                 Joshua B. Swigart, Esq.
                                 Josh@SwigartLawGroup.com
                                 Noah J. Larsh, Esq.
                                 Noah@SwigartLawGroup.com
                                 Attorneys for Defendants

**LAW OFFICE OF DANIEL G. SHAY**

Date:  August 13, 2024           By:  *s/ Daniel Shay*
                                 Daniel G. Shay, Esq.
                                 DanielShay@TCPAFDCPA.com
                                 Attorney for Defendants