Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
Noah J. Larsh (SBN 348541)
Noah@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DESIGNTECHNICA CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SWIGART LAW GROUP, APC and Thirty-Six (36) Of Its Putative Clients,<br><br>Defendants. | CASE NO: 24CV1054-W-AHG<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION OF DEFENDANTS SWIGART LAW GROUP, APC AND THIRTY-SIX (36) OF ITS PUTATIVE CLIENTS TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(B)(6) AND FRCP 12(B)(1)**<br><br>Hon. Judge Thomas Whelan<br><br>DATE: September 23, 2024<br>TIME: No oral argument pursuant to local rule<br>CRTRM: C3 |

Defendants, Swigart Law Group APC and Thirty-Six (36) of its Putative Clients ("Defendants"), hereby submit this reply brief in support of their Motion to Dismiss the Complaint filed by Plaintiff, Designtechnica Corporation ("Plaintiff"). The opposition brief presented by Plaintiff fails to adequately rebut the core arguments in favor of dismissal, namely the lack of subject matter jurisdiction, and Plaintiff's improper attempt to circumvent arbitration obligations under the operative contract.

**I. Argument**

**A. The Court Lacks Federal Subject Matter Jurisdiction**

Plaintiff has wholly failed to refute the clear assertion that this Court lacks subject matter jurisdiction. In its pleadings, Plaintiff cites no federal statute that would confer such jurisdiction upon this Court. Instead, Plaintiff's sole basis for jurisdiction relies on diversity grounds, which likewise fails to meet the necessary legal requirements. Absent any valid statutory or jurisdictional authority, this case cannot properly proceed before this Court and should be dismissed for lack of subject matter jurisdiction.

1. <u>Plaintiff has Failed to Address the Conclusory Amount in Controversy Pleaded as it Relates to Defendant, Swigart Law Group, APC</u>

To establish diversity subject matter jurisdiction in federal court, Plaintiff must plead two elements. First, there is complete diversity of citizenship in that there is no common state citizenship between the plaintiffs and defendants in a suit. *Navy Federal Credit Union v. LTD Financial Services*, *LP*, 972 F.3d 344, 352 (2020). Second, the amount in controversy must exceed $75,000. *Id* at 352. Defendants do not challenge the first element. The larger issue, and the fatal missing element to establish diversity jurisdiction is the amount in controversy. That amount is simply not met. Plaintiff pleads one single sentence attempting to address this deficiency in its complaint by stating, "The amount in controversy exceeds $75,000, exclusive of interests." [Complaint ¶ 2]. This conclusory statement regarding the alleged amount in controversy has no supporting factual basis, an explanation as to how it was calculated or which parties it would apply. A conclusory, unsupported statement of the amount in controversy exceeding $75,000 is indeed insufficient to establish federal diversity jurisdiction. See *Ferrari v. Francis*, 2024 WL 1980713 * 3 (N.D. Texas 2024) (laying out the analysis that

the district court must initially assess the complaint to see if it clearly shows that the claims surpass the jurisdictional amount. In cases like this, where the complaint only makes a vague statement about jurisdiction and the exact amount in controversy is unclear, the court examines the facts presented to determine if it appears likely that the claims exceed $75,000). Plaintiff's reliance on the single sentence found in paragraph two of the complaint, simply laying out the amount "exceed[ing] $75,000…" does not meet this test. While normally "a plaintiff's general allegation that the dispute exceeds the jurisdictional minimum is sufficient to support jurisdiction," when challenged, the plaintiff "has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Andersen v. Vagaro, Inc*., 57 F.4th 11 * 15 (1st Cir. 2023).

The law requires that the plaintiff provide more than just a bare assertion; instead, they must allege with sufficient particularity the underlying facts supporting the jurisdictional threshold if it is challenged. The party asserting federal jurisdiction bears the burden of proving that the amount in controversy meets the jurisdictional requirements. *Kaplan v. Jewett*, 229 F.Supp.3d 731, 733-734. When the amount in controversy is not disputed, the Court will accept the plaintiff's sincere assertion of the amount in controversy unless it is legally certain that the claim is actually for less than the jurisdictional threshold. *Id*. When the defendant contests the plaintiff's claim regarding the amount in controversy, the plaintiff is required to substantiate their assertion with competent evidence, meeting the preponderance of the evidence standard. *Id*.

To establish jurisdiction, mere allegations or claims without substantial evidence are insufficient. It is necessary to provide allegations of fact or other evidence to support the determination of whether the amount in controversy requirement is met by preponderance of the evidence. *American Family mutual Insurance Company v. Vein Centers for Excellence, Inc*., 912 F.3d 1076, 1080-1081 (8th Cir. 2019). Here, Defendants challenged the amount in controversy in Plaintiff's complaint. Plaintiff has done nothing to support its claims that the jurisdictional amount has been met, with the exception of referencing paragraph two of its complaint, where in an amount in excess of $75,000 is listed. No supporting declarations,

affidavits or any evidence supporting this assertion was attached to the complaint and no additional evidence was submitted in opposing Defendant's challenge.

Giving Plaintiff the benefit of the doubt when (as here) Plaintiff fails this test, the Court can then "rely on summary judgment-type evidence to ascertain the amount in controversy. In doing so, the court looks "to other evidence relevant at the time [that] the plaintiff] filed [the] complaint ""  *Ferrari v. Francis*, 2024 WL 1980713 * 3 (N.D. Texas 2024). Here, again, Plaintiff submitted no evidence supporting establishing any amount in controversy.[1]

2. Plaintiff Failed to Show How Its Suit is Not Barred by the Litigation Privilege

Plaintiff does nothing in its opposition to explain how its pleading identifies why the Swigart Law Group, APC ("SLG") is a proper party to this action and is somehow tied to the claim Plaintiff has suffered damages in excess of $75,000. SLG and its attorneys merely represent the thirty-six (36) individuals who have initiated arbitration actions through JAMS against Plaintiff for their illegal activities. In Plaintiff's seven (7) page complaint there is only, arguably, one paragraph identifying what SLG did. In Paragraph 14, Plaintiff pleads that SLG "filed thirty-six (36) separate Claims against DTC with JAMS on behalf of the Claimants." (Complaint ¶ 14). There are no facts supporting what SLG did improper, how SLG is a proper party to this action and why the claims against SLG would amount to damages in excess of $75,000 associated with SLG. Without this threshold element (an amount in controversy), Plaintiff has failed to properly allege any amount or facts associated with Defendant SLG that would arguably amount to damages in excess of $75,000. Based on this deficiency, Defendant SLG must be dismissed.[2]

In what is a recurring theme of Plaintiff's opposition, Plaintiff fails to address, or even attempt to rebut the authority Defendants assert in Defendants' motion to dismiss. *See Welk Resort Group Inc. v. Reed Hein & Assocs., LLC*, 2019 WL 1242446 (S.D. Cal. Mar. 18, 2019).

[1] Plaintiff would be required to submit affidavits or declarations and deposition testimony, among other things. *Ferrari v. Francis*, 2024 WL 1980713 * 3 (N.D. Texas 2024)

[2] As explained in further detail below, Defendant cannot then bootstrap a claim under the Declaratory Judgement Act to serve as the jurisdictional basis.

Plaintiff rests its argument by claiming that "if [Swigart] is not included . . . any . . . relief granted . . . would be limited to the 36 Claimants . . . [and] Nothing would prevent [Swigart] from representing additional clients and employing the same tactics against Plaintiff. See Plaintiff. Oppo. § III. Plaintiff's core contention is that Swigart must be made a party to these proceedings to prevent potential future litigation, thus grounding its jurisdictional argument in a speculative scenario of its own making. Plaintiff's position is unsupported by any legal authority and amounts to nothing more than a hypothetical fear of future disputes. This baseless conjecture cannot serve as a legitimate basis for this Court to assert jurisdiction over Swigart. Courts are not in the business of entertaining speculative claims or resolving disputes that have not yet materialized. Plaintiff's argument, built on unfounded assumptions, fails to meet the legal threshold for establishing jurisdiction and should therefore be dismissed as meritless. As such, the Litigation Privilege bars Plaintiff's suit against Swigart.

Plaintiff has failed to meet its burden of establishing federal jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) or 28 U.S.C. § 1331 (federal question jurisdiction) as it relates to SLG and those claims must be dismissed.

3. <u>Plaintiff Failed to Plead an Amount in Controversy as it Relates to the Thirty-Six (36) Individuals</u>

Plaintiff improperly relies upon aggregated filing fees and potential judgments in the amount of $5,000 in an attempt to meet its amount in controversy threshold.

*a. Court's Do Not Aggregate Claims When There Can be only One Recovery*

The premise of Plaintiff's amount in controversy is the aggregate amount of non-recoverable filing fees incurred by JAMS and the potential for a $5,000 statutory award in damages by each Defendant. The total amount claimed when aggregating Defendants' claims is $5,000 multiplied by 36 or $180,000 plus $1,500 in filing fees incurred for each Defendant ($54,000). The amount equals $234,000. [Complaint at P 6]. But this amount is based on aggregating all thirty-six Defendants (who filed individual JAMS actions). When divided out the amount in controversy as it relates to each individual Defendant is only $6,500.[3] It is

[3] $234,000/36 claimants = $6,500 each (which includes $1,500 JAMS filing fee and $5,000 in statutory damages under CIPA).

undisputed that each of the Thirty-Six Defendants brought separate actions in JAMS. It was Plaintiff who then sought to combine all individual defendants in one federal court action in an attempt to meet the amount in controversy. The general rule is that each Defendant must meet the amount in controversy requirement separately. See *State Farm Mut. Auto. Ins. Co. v. A&J Medical Center, Inc.*, 20 F.Supp.3d 1363, 1367. (The general rule for aggregating claims against multiple defendants to meet the amount-in-controversy requirement is that when a lawsuit involves multiple defendants with separate and distinct claims against each, the jurisdictional test is based on the amount of each individual claim, rather than their total sum). That amount is not met here. According to Plaintiff, even with the impermissible inclusion of filing fees, each Defendant's arbitration claims only amount to $6,500.[4]

Additionally, the exception of aggregating claims if there is joint and several liability would not apply. Defendants each maintain a separate arbitration action with no connection to each other. The only thread of a connection is the fact Plaintiff has engaged in similar, independent illegal actions in violation of California's Invasion of Privacy Act., C.C.P. § 631 ("CIPA") which is not enough for joint and several liability. See *State Farm Mut. Auto. Ins. Co. v. A&J Mecical Center, Inc.*, 20 F.Supp.3d 1367-1368 (conducting the analysis in determining the allegations surrounding a scheme jointly perpetrated by all of the Defendants for the purposes of joint and several liability).

There is no nexus between each individual Defendant to somehow be jointly and severally liable for Plaintiff's claimed damages. Each maintain a separate action with JAMS with independent acts alleged. There is no connection between each Defendant, other than Plaintiff's illegal acts toward them. Without this nexus, the damages claims cannot be aggregated for purposes of meeting the amount in controversy requirement for purposes of diversity.

*b. Unrealized Costs and Prospective Damages Cannot Serve as a Basis for the Amount in Controversy*

[4] This filing fee should not be seen as a "damage", but a taxable cost under the FRPA and should not be included for the purposes of the amount in controversy calculation.

Potential JAMS filing fees, especially those not paid, cannot serve as the basis for the amount in controversy to establish diversity jurisdiction. Plaintiff is claiming that it may have to incur certain costs to proceed with the JAMS arbitrations, but has not actually incurred costs in excess of $75,000. This prospective cost cannot serve as its basis for the amount in controversy requirement. Speculative future costs that have not yet been incurred cannot typically be counted as damages for the purposes of establishing the amount in controversy required for diversity jurisdiction. This principle is supported by several cases which emphasize that only costs that flow directly and with a fair degree of probability from the litigation can be included in the amount in controversy calculation. Costs that are speculative or hypothetical are generally excluded.

In *Blaszczk v. Darby*, 425 F.Supp.3d 841, 852 the court stated that for calculating the amount in controversy for diversity jurisdiction, the mere possibility of future benefit or cost is not enough; any benefit or cost must flow directly and with a fair degree of probability from the litigation. Similarly, in the *Aguilar v. Amazon.com, Inc.*, 677 F.Supp.3d 1075, 1078 it was held that retailer's estimates of future attorneys' fees were too speculative to meet the amount in controversy threshold for diversity jurisdiction. The same analysis should be applied here. Plaintiff is relying upon unpaid, potential costs incurred through the JAMS arbitrations as well as each individual successfully recovering $5,000 each under their respective CIPA claims. These yet to be incurred costs and speculative, future, judgments cannot serve as the basis for calculating the amount in controversy for purposes of diversity jurisdiction. See *Sykes v. Cook Incorporated*, 72 F4th 195, 208 (7th Cir. 2023) (a plaintiff does not act in good faith when she bases jurisdictional allegations on injuries she has not suffered.).

Plaintiff's contention that the amount in controversy exceeds $75,000 is based on speculative and inflated projections of potential arbitration costs and statutory damages under the California Invasion of Privacy Act (CIPA), which have yet to be realized. This cannot serve as the basis for the amount in controversy to establish diversity jurisdiction. Plaintiff

does nothing to rebut this point. Accordingly, all claims against the individual defendants must be dismissed, as the amount in controversy to satisfy diversity has not been met.

**B. This Court Lacks Federal Question Jurisdiction**

Plaintiff's opposition also fails to articulate a federal question sufficient to confer jurisdiction under 28 U.S.C. § 1331. Plaintiff's reliance on the Declaratory Judgment Act (28 U.S.C. §§ 2201-2202) as a basis for federal jurisdiction is misguided. As the Ninth Circuit has consistently held, the Declaratory Judgment Act does not itself create federal jurisdiction; it merely provides a remedy when jurisdiction is otherwise established. See *West Pub. Co. v. McClogan*, 138 F.2d 320 (1943). See also *Golden Eagle Ins. Co. v. Travelers Companies,* 133 F.3d 1220 (1998) (stating that the Federal Declaratory Judgment Act does not confer federal subject matter jurisdiction, and there must be an independent basis for such jurisdiction). Similarly, in *Shell Oil Co. v. Frusetta*, the court highlighted that the Declaratory Judgment Act is not a jurisdictional statute and does not expand federal protective jurisdiction to cover controversies not removable under the removal act. 290 F.2d 689, 694 (9th Cir. 1961) (The Declaratory Judgment Act is not a jurisdictional statute at all and was not intended to expand federal protective jurisdiction to cover controversies not removable under the Removal Act.).

In conclusion, the court need not reach Plaintiff's arguments of choice of law, contract interpretation and the applicability of the arbitration provision, as Plaintiff has not met its burden to establish its right to have its grievances heard by this court of limited jurisdiction.

**C. Even If This Court Finds It Has Jurisdiction, JAMS Remains The Proper Venue For This Dispute**

Even if the Court were to overcome the threshold issue of subject matter jurisdiction, Plaintiff's opposition to Defendants' motion to dismiss remains fundamentally flawed. Plaintiff fails to adequately address or distinguish the binding authority that Defendants have presented. Therefore, the Court should reject Plaintiff's opposition and grant Defendants' motion to dismiss and remand the individual actions to JAMS.

1. <u>Plaintiff's Fails to Address Defendants' Authority, Fortifying the Weakness of Plaintiff's Claims</u>

In response to Defendant's arguments, Plaintiff relies on general cases surrounding the applicability of arbitration agreements. Contrary to Plaintiff's arguments, the Parties have an

agreement to arbitrate by way of "consent, not coercion" as established through the terms of use. *See Volt Info Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); Decl. J. Swigart ¶ 5, Complt. ¶ 9, Ex. B. Plaintiff, interestingly, fails to address United States Supreme Court cases cited by Defendants. *See Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 69-71 (2019) (a court may not decide an arbitrability question clearly delegated to the arbitrator); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (affirming delegation where agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the enforceability of this Agreement").

Plaintiff instead relies on two district court cases, including one from the Seventh Circuit, to support its argument. However, Plaintiff's reliance on *Ferguson-Kubly Indus. Services, Inc. v. Circle Environmental, Inc*., 409 F. Supp. 2d 1072 (E.D. Wis. 2006), is both unpersuasive and distinguishable from the present matter. In *Ferguson-Kubly*, the court noted that arbitration had not yet commenced, as no answer had been filed, nor had an arbitrator been appointed, precluding the party from seeking the same injunctive relief from the arbitrator that it sought from the court. *Id*. at 1074. Here, in contrast, Swigart Clients have already filed individual arbitration demands. Decl. J. Swigart ¶¶ 6 – 37, Ex. B - AG. Yet, due to Plaintiff's own inaction, those arbitrations have not progressed. Plaintiff's delay has effectively foreclosed the opportunity to obtain relief through arbitration, the very relief it now seeks from this Court. Plaintiff's arguments are thus self-defeating and should not be considered a valid basis for relief.

Plaintiff further relies on *Jolly v. Intuit, Inc.*, 485 F. Supp. 3d 1191 (2020); however, the guidance in that case does not provide Plaintiff the support it seeks. In *Jolly*, Intuit sought declaratory relief to enforce its rights under its terms and conditions after the arbitrator refused to send the claims to small claims court, as called for by the terms. *Id*, at 1206. Contrary here, Plaintiff has not even allowed an arbitrator to rule on Plaintiff's choice of law contentions, which is a pre-requisite to giving Plaintiff the necessary basis for the instant suit. In fact, in one of the arbitrations where Plaintiff chose to abide by its terms and allow the JAMS arbitrator to determine the issue, Plaintiff prevailed in asserting that Oregon substantive law applied to

the arbitration. Decl. J. Swigart ¶ 9, generally, Ex. E. Plaintiff, seems to believe that such a ruling constitutes binding authority on the remainder of Swigart Clients' arbitrations and those individuals should not pursue further claims under CIPA. See Plaintiff's Motion pg. 7. Such a conclusion fails to understand the basic nature of the arbitration process. Plaintiff's suit here is not an attempt to "aid in arbitration" because Plaintiff has refused to participate in the arbitrations. Decl. J. Swigart ¶¶ 6 – 37, Ex. B – AG.

Defendants reemphasize the agreement between the parties strictly calls for JAMS as the venue for dispute resolution. Decl. J. Swigart ¶ 5, Complt. ¶ 12; Decl. J. Swigart ¶ 5, Complt., Ex. B, § 18 ("Dispute Resolution; Binding Arbitration"). The Arbitration Agreement at issue in this case also incorporates the JAMS arbitration rules, which the Ninth Circuit has held are "clear and unmistakable evidence" that the "parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The issues at hand between the Plaintiff and the Swigart Clients fall squarely within the exclusive jurisdiction of JAMS arbitration, as mandated by the binding arbitration agreements in place.

2. <u>The Terms Give Unequivocal Authority to JAMS to Resolve Disputes Between The Parties</u>

Plaintiff contends that invoking Section 19 of the Terms of Use (Compl., Ex. B, § 19 "Governing Law and Venue") and ignoring Section 18 (id., § 18 "Dispute Resolution; Binding Arbitration") resolves any conflict between its breach of contract claims and the arbitrators' authority under the Federal Arbitration Act ("FAA"). This argument contradicts the core principles of arbitration, which serve as an alternative to litigation. Parties to an arbitration agreement are afforded the freedom to structure their agreements, limit the issues subject to arbitration, and determine the rules and participants in the process. As the U.S. Supreme Court recognized in *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 683 (2010), arbitration agreements allow parties to craft the scope and procedures of their dispute resolution mechanisms as they see fit. Plaintiff's position undermines this well-established notion, and, as such, cannot prevail.

Plaintiff's sole argument on this issue rests on the Northern District's decision in *Jolly*. However, the facts of *Jolly* are materially distinguishable from the present case. In *Jolly*, Intuit

did not refuse to engage in the arbitrations. On the contrary, Intuit paid all required fees and complied with all relevant deadlines. Intuit sought court intervention only after the arbitrator issued what Intuit believed was an erroneous decision. In stark contrast, Plaintiff here continues to refuse to participate in the arbitrations initiated by Swigart Clients. Decl. J. Swigart ¶¶ 6 – 37, Ex. B - AG. Here, Plaintiff seeks to preemptively invoke this Court's jurisdiction. Such conduct contravenes the fundamental public policy favoring arbitration. A ruling in Plaintiff's favor would set a dangerous precedent, allowing businesses like Plaintiff to bypass arbitration by immediately seeking declaratory and injunctive relief whenever they like.

3. This Court Does Not Need to Address Plaintiff's Governing Law Provision Given The Procedural Posture of The Case.

At this stage of the proceeding there is no need for the Court to address whether Plaintiff's choice of law provision is enforceable and controlling. Plaintiff's arguments addressing the governing law provision is a red herring. For the Court to address this issue, the Court must first determine that it has jurisdiction over Plaintiff's complaint which Defendants clearly challenge. Therefore, Plaintiff's arguments are premature and should not yet be addressed.

However, if this Court were to decide it has jurisdiction, an evidentiary record would be required for the Court to determine this issue because even an express choice-of-law provision does not override California's choice-of-law rues. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). The Parties would then address their respected positions under the Restatement (Second) of the Conflict of Laws § 187 where the Defendants here challenge the contractually selected governing law. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992). Again, this issue is not ripe to be addressed by the court because the Court has not determined it has jurisdiction over this substantive issue raised by Plaintiff.

## II. Conclusion

For the reasons outlined above, Defendants respectfully request that the Court grant the Motion to Dismiss in its entirety, as this Court lacks jurisdiction to hear Plaintiff's claims, and Plaintiff's efforts to bypass the agreed arbitration process are improper.

Respectfully submitted,

**SWIGART LAW GROUP**

Date: September 16, 2024

By: _s/ Joshua Swigart_

Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com
Noah J. Larsh, Esq.
Noah@SwigartLawGroup.com
Attorneys for Defendants

**LAW OFFICE OF DANIEL G. SHAY**

Date: September 16, 2024

By: _s/ Daniel Shay_

Daniel G. Shay, Esq.
DanielShay@TCPAFDCPA.com
Attorney for Defendants